John Wesley WEBBER, Appellant,

v.

The STATE of Texas, Appellee.

No. B14–87–290–CR.

Court of Appeals of Texas,
Houston (14th Dist.).

July 28, 1988.

Discretionary Review Refused
Nov. 16, 1988.

Will Outlaw, Houston, for appellant.

John B. Holmes, Jr., Kathlyn Giannaula, Houston, for appellee.

Before PAUL PRESSLER, MURPHY and ELLIS, JJ.

## OPINION

ELLIS, Justice.

Appellant, John Wesley Webber, appeals from a judgment of conviction for the offense of aggravated robbery. Tex.Penal Code § 29.03 (Vernon 1974). A jury rejected appellant's not guilty plea and found him guilty as charged in the indictment. After finding the allegations of the two enhancement paragraphs of the indictment true, the jury assessed appellant's punishment at forty-nine years' confinement in the Texas Department of Corrections. We affirm.

Appellant brings eight points of error. Points of error one, two, and three challenge the sufficiency of the evidence to support his conviction while the fourth point suggests a pre-trial identification procedure was unnecessarily suggestive. In points of error five, six, and seven, appellant argues the trial court committed reversible error by overruling his objection to an alleged violation of a motion in limine granted in his favor, and by instructing the jury on the law of parole. In a *pro se* brief, appellant seeks to add an eighth point of error in which he questions whether the State proved the finality of his two prior felony convictions.

The facts show that a robber, a black male wearing a hat and white shirt, followed the complaining witness, Karem Maredia, into the store portion of a Houston Diamond Shamrock service station at about 11:20 p.m. on July 27, 1986. Maredia worked as a cashier at the station. The robber first stood by the candy display while Maredia answered the telephone, but soon went behind the counter and told Maredia to hang up. Maredia had been talking to a friend. He used his native language to tell the friend he was being robbed, and then hung up.

When the robber asked Maredia for money, he first refused. But when the robber put his hand on something inside his shirt and threatened to kill him, Maredia opened the cash register. At trial, Maredia testified he feared he would be killed and he believed the robber had a gun. While the robber was emptying the cash register, Maredia went outside the store portion of the station to hold the door closed and keep the robber inside. Although he succeeded in keeping the door shut for about a minute, the robber ultimately pushed open the door and ran off down a back street. Maredia screamed loudly for help and started to chase the robber, but returned to the store to call the police. At trial, he estimated the robber took sixty dollars from the cash register.

Elias Rivas lived four or five houses down from the Shamrock station. He was outside his home with a friend, Alvaro Rodriguez, while the robbery was taking place. He testified someone had driven a red Nissan past his home, turned it around and parked it in a dark spot on the same street, whereupon a person wearing a white tee shirt and a baseball cap left the car and walked toward the Shamrock station. Rivas started to approach the car when it began moving slowly forward with its light off. Rivas testified the appellant was driving the car. When he got to within ten feet of appellant, Rivas heard Maredia screaming he had been robbed. Appellant immediately accelerated and the person wearing a white tee shirt and baseball cap ran toward the car.

Rivas and Rodriguez began to chase the car. Rivas was yelling "I know who you look like; I know your license plate; I'm going to make sure you get caught." He and Rodriguez stopped when the runner told them he had a gun and would kill them. When the runner passed into better light they realized he had a knife and not a gun. Although they started to chase the runner again, he jumped into the driver's side of the Nissan. Rivas testified someone inside the car made room for the runner and that the car sped away immediately. After Rivas wrote down what he could remember of the Nissan's license number, he and Rodriguez went back to the service station. They found Maredia telling Houston Police officer Tim Rogers about the robbery and describing his assailant. When Rivas and Rodriguez also gave a description, Rogers broadcast a description of the robber, the car, and its occupants, indicating the license number was either 635 JGN or 635 GJN.

Houston Police Officer Kare Padgett and her partner, who were a few miles away, heard the broadcast, began watching for the Nissan, and soon came upon it. They followed the car while police headquarters verified that its description of the car registered to license number 635 JGN matched the car they were following. Appellant was driving when the police signalled for the car to pull over. There was a passenger in

the front seat and two females were in the back seat with M.T. Samuels. When Officer Padgett searched the car she found a knife on the floor near Samuels's seat, and a crumpled blue baseball cap on his seat. The police recovered just over eighteen dollars from Samuels's person. Within ten minutes of Officer Rogers's arrival at the Shamrock station, he joined his fellow officers at the scene of arrest. When the police took the three males back to the service station, Rivas and Rodriguez identified Samuels as the person they had seen running from the station wielding a knife. Rivas identified the appellant as the person he had seen driving the Nissan.

In his first and second points of error, appellant argues there was either no evidence or insufficient evidence to prove beyond a reasonable doubt that he used or exhibited a deadly weapon, a knife, during the robbery, as alleged in the indictment. We disagree.

■ The indictment did not allege that appellant acted as a party to the robbery. But because the evidence at trial raised the issue of appellant's participation in the robbery, the trial court chose to instruct the jury that it could find the appellant guilty on finding he acted with criminal responsibility. *See* TEX.PENAL CODE § 7.01–.02 (Vernon 1974); *English v. State,* 592 S.W. 2d 949, 955 (Tex.Crim.App.) (en banc), *cert. denied,* 449 U.S. 891, 101 S.Ct. 254, 66 L.Ed.2d 120 (1980). The court properly defined criminal responsibility for the offense of another as: a person's acting with intent to promote or assist in committing the offense by soliciting, encouraging, directing, attempting, or aiding the other person to commit the offense. *See* TEX.PENAL CODE § 7.02(a)(2); *Garza v. State,* 573 S.W.2d 536, 537 (Tex.Crim.App. [Panel Op.] 1978).

■ Rivas positively identified appellant and offered direct evidence that he had driven the robber to the service station, waited for him, and transported him away after the robbery. Officer Padgett further testified that appellant was driving when she stopped the Nissan. As we indicate in our

discussion of appellant's third point of error, there was sufficient evidence for the jury to conclude beyond a reasonable doubt that appellant was criminally responsible, as the driver of a getaway car, for the acts of M.T. Samuels. Tex.Penal Code § 7.02(a)(2); *Thompson v. State*, 697 S.W.2d 413, 417 (Tex.Crim.App.1985) (en banc). Therefore, this court will sustain appellant's conviction if the record contains sufficient evidence to show that Samuels used or exhibited a deadly weapon to threaten or place the complainant in fear of imminent bodily injury or death, as alleged in the indictment.

Because the complaining witness Meridia never saw a weapon, the State properly relied on circumstantial evidence to show Samuels used a deadly weapon during the robbery. *See Taylor v. State*, 637 S.W.2d 929, 932 (Tex.Crim.App. [Panel Op.] 1982). Moreover, Meridia offered direct evidence of both his fear of being killed and the assailant's actions. In both circumstantial and direct evidence cases, this court must review the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Houston v. State*, 663 S.W.2d 455 (Tex.Crim.App.1984) (opinion on appellant's motion for rehearing, en banc). In a circumstantial evidence case, this court may not sustain the conviction unless the circumstances exclude every reasonable hypothesis except the appellant's guilt. *Johnson v. State*, 673 S.W.2d 190, 195 (Tex.Crim.App.1984) (en banc).

The robber put his hand on "something" inside his shirt and simultaneously threatened to kill the complaining witness Meridia. Meridia testified he opened the cash register because he believed the robber had a gun and would kill him if he did not. The victim need not see the weapon in order for the jury to conclude the assailant communicated a threat of serious bodily injury or death. *Taylor*, 637 S.W.2d at 933 n. 3, *distinguishing Moore v. State*, 531 S.W.2d 140 (Tex.Crim.App.1976). Meridia's assailant threatened to kill him *by* gesturing menacingly with an object beneath his shirt. *Compare Taylor*, 637 S.W.2d at 933

(held, no showing of threat communicated by use of a deadly weapon where victim noticed bulge in co-defendant's pocket before assailant injured complainant who testified she had no fear she would be injured by a handgun). The jury also had the benefit of Meridia's demonstrating the assailant's actions.

Moreover, Rivas and Rodriguez actually saw the knife in the assailant's hand when he was running toward the getaway car. Within ten minutes, Officer Padgett recovered a knife from the Nissan appellant was driving. The knife was on the floor beneath the seat where Samuels had been sitting. Padgett identified the knife at trial as the one she took from the getaway car. The jury was entitled to conclude that Samuels was the assailant, and that the knife was the same weapon Rivas and Rodriguez saw in the robber's hand as he ran toward appellant in the waiting car while the complainant was screaming he had been robbed. The same evidence supports the jury's concluding the knife was the same weapon the assailant kept hidden but used to threaten the complainant. *See Brown v. State*, 716 S.W.2d 939, 947 (Tex. Crim.App.1986) (en banc).

As is well settled a knife is not a deadly weapon per se. *See* TEX.PENAL CODE ANN. § 1.07(a)(11), *Blain v. State*, 647 S.W.2d 293, 294 (Tex.Crim.App.1983) (en banc). However, Officers Rogers and Padgett both testified that the knife Padgett recovered was capable of causing serious bodily injury or death, based on their experience investigating crimes involving use of a knife. The jury could base its conclusion that Samuels used a deadly weapon on the officers' testimony. *English v. State*, 647 S.W.2d 667, 669 (Tex.Crim.App.1983) (en banc); *Jackson v. State*, 668 S.W.2d 723, 725 (Tex.App.—Houston [14th Dist.] 1983, pet. ref'd). Moreover, as *English* teaches, the jury was entitled to consider the ominous words the assailant used to threaten Meridia as a factor governing its conclusion that he used a deadly but unseen weapon, namely a knife, to threaten Meridia or place him in fear of imminent bodily injury or death. 647 S.W.2d at 669.

Having reviewed the facts of this case in the light most favorable to the verdict, we conclude there was sufficient evidence on which the jury could base its conclusion that appellant used or exhibited a deadly weapon as a party to the offense. Because the circumstances of this case exclude every reasonable hypothesis except appellant's guilt, his first and second points of error are overruled.

■ Appellant's third point of error is a challenge to the sufficiency of the evidence to support the jury's finding appellant guilty of the offense under the law of the parties. We reiterate that the *Jackson v. Virginia* standard demands that we view the facts in the light most favorable to the verdict. *See Thompson,* 697 S.W.2d at 416. Furthermore, while mere presence at the scene of the offense will not suffice, we may consider all circumstantial evidence of the events occurring before, after, and during the offense in determining whether the record contains sufficient evidence to sustain the jury's finding appellant guilty. *See Beardsley v. State,* 738 S.W.2d 681, 684–85 (Tex.Crim.App.1987) (opinion on State's petition for discretionary review, en banc) and *Thompson,* 697 S.W.2d at 416–17, which both cite *Wygal v. State,* 555 S.W.2d 465, 468–69 (Tex.Crim.App.1977). Viewed from this standard, we must determine whether there is sufficient evidence to show that appellant committed an act which encouraged, directed, aided or attempted to aid Samuels in his commission of the robbery. *Beardsley,* 738 S.W.2d at 684; *Thompson,* 697 S.W.2d at 416–17.

As we have noted, Rivas positively identified appellant as the driver of the car toward which the robber ran and by which he escaped his pursuers. Rivas also picked appellant out of a lineup at police headquarters in November, 1986. In addition, both officers testified to identification procedures that took place within thirty minutes of the offense, when they brought appellant, Samuels and a third black male back to the Shamrock station: Rivas identified appellant as the driver of the Nissan; both he and Rodriguez identified Samuels as the person they had seen running from

the station. In addition, although appellant insists the State never established that Samuels was the robber, Officer Rogers reported the complainant identified Samuels as the actual robber within thirty minutes of the offense.

Moreover, the testimony of Meridia, Rivas, Rodriguez, as well as both police officers, demonstrates consistency in the description of the clothing of the person seen going into the station, running from the station while wielding a knife, stopped by the police, and identified within thirty minutes as the actual robber Samuels. The record contains sufficient evidence from which the jury could infer that Samuels actually was the robber. *See Bonner v. State,* 640 S.W.2d 601, 603 (Tex.Crim.App. [Panel Op.] 1982) (identification based on clothing held sufficient in light of all circumstances of the case); *Jones v. State,* 500 S.W.2d 661, 666 (Tex.Crim.App.1973) (failure of some witnesses to offer identification will not render other identification testimony insufficient). *See also, Bickems v. State,* 708 S.W.2d 541, 543 (Tex.App.— Dallas, 1986, no pet.) (notwithstanding weakness of in-court identification, positive out-of-court identification, coupled with presence of accused in the area of the offense, wearing clothing similar to that described by complainant, held sufficient evidence to sustain robbery conviction).

Rivas also witnessed the robber being dropped off at the station from the same car in which he later fled. Moreover, he testified he saw appellant inching the car forward with its lights extinguished, became suspicious, and started to follow the car even before he was aware the robbery had occurred. *Compare Morrison v. State,* 608 S.W.2d 233, 235 (Tex.Crim.App. 1980) (circumstances linking accused to robbery occurred only after offense). After he saw the robber running from the Shamrock station, Rivas saw someone in the car make room for him before the car sped away. Within ten minutes, police stopped the same car. Appellant was driving; Samuels was a passenger.

Having viewed the record in the light most favorable to the verdict, we conclude

that because the evidence excludes every reasonable hypotheses except appellant's guilt, the evidence is sufficient to show that appellant drove the getaway car and therefore committed an act which aided Samuels in accomplishing the aggravated robbery of the Shamrock station. *Thompson*, 697 S.W.2d at 417; *White v. State*, 671 S.W.2d 40, 43 (Tex.Crim.App.1984) (en banc); *Stewart v. State*, 652 S.W.2d 496, 500 (Tex.App.—Houston [1st Dist.] 1983, no pet.). Appellant's third point of error is overruled.

In his fourth point of error, appellant complains Rivas identified him pre-trial in a manner that was so suggestive it denied him due process. He submits the trial court therefore erred by permitting either Rivas or Officer Rogers to testify concerning Rivas's identification of him as the driver of the getaway car.

■ The record shows that appellant failed to object to Rivas's in-court identification, Rivas's statement that he identified appellant out of a lineup, or Officer Rogers's testimony that Rivas identified appellant within thirty minutes of the offense at the scene of the offense. Indeed, when the State sought to admit State's Exhibit Three, a photograph of the members of the lineup, appellant's counsel specifically stated he had seen the exhibit and had no objection to its offer. Moreover, the record does not demonstrate that appellant attempted to excuse his failure to object. Although the appellant sought to suppress identification testimony in two *pro se* pre-trial motions filed with the trial court, the trial court properly denied relief on the grounds he was represented by counsel. *Rudd v. State*, 616 S.W.2d 623, 625 (Tex.Crim.App. [Panel Op.] 1981).

Having failed to object or evidence an explanation for his failure to object on the record, appellant waived his due process challenge to the pre-trial identification procedures. *Perry v. State*, 703 S.W.2d 668, 673 (Tex.Crim.App.1986) (en banc). Appellant's fourth point of error is overruled.

Appellant bases his fifth point of error on statements the prosecutor made during voir dire of the jury panel. He claims the prosecutor violated a portion of a motion in limine granted in his favor by the trial court because she suggested he had prior convictions. The court's notation granting appellant's motion in limine required the prosecutor to approach the bench and request a ruling before referring to appellant's prior convictions.

During her voir dire, the prosecutor informed the members of the panel that the law permits them to enhance punishment if, *"in a hypothetical case"* the accused has a record of prior convictions. She then explained that she would ask the members whether, again *"in a hypothetical case ... such as aggravated robbery,"* they could assess a minimum of twenty-five years' punishment if the accused had two prior felony convictions. The prosecutor then proceeded to question individual members of the panel, went on to other matters, and concluded her voir dire. Only then did appellant voice his objection to the prosecutor's statements, by moving the trial court to strike the entire panel on the grounds that the prosecutor had violated his motion in limine. Appellant submits the court's refusal to quash the panel was reversible error. We disagree.

■ We first note that appellant failed to raise his objections to the prosecutor's allegedly suggestive remarks in a timely manner. In order to preserve error based on purported violations of a previously granted motion in limine, the complaining party must raise a timely objection to allegedly improper statements or questions. *Gonzales v. State*, 685 S.W.2d 47, 50–51 (Tex.Crim.App.) (en banc), *cert. denied*, 472 U.S. 1009, 105 S.Ct. 2704, 86 L.Ed.2d 720 (1985), citing *Brazzell v. State*, 481 S.W.2d 130 (Tex.Crim.App.1972) and *Romo v. State*, 577 S.W.2d 251 (Tex.Crim.App. [Panel Op.] 1979). Both *Brazzell* and *Romo* clearly require the accused to voice an objection *when the allegedly offensive matter is offered* in order to preserve error. *Brazzell*, 481 S.W.2d at 131; *Romo*, 577 S.W.2d at 252. Because the trial court had required the prosecutor to approach the bench for a ruling concerning the matters contained in appellant's motion in limine,

appellant had only to refer to the motion without risk of prejudicing the jury. *See Romo,* 577 S.W.2d at 252. We hold that appellant waived any possible error by waiting to object until after the prosecutor had gone on to her remaining voir dire questions and concluding remarks.

Moreover, we conclude the prosecutor's statements did not violate the court's granting of appellant's motion in limine. The prosecutor clearly limited her remarks to a hypothetical case. There was no impermissible reference to the specific enhancement allegations of the enhancement paragraph of appellant's indictment. *See Gobert v. State,* 717 S.W.2d 21, 23 (Tex. Crim.App.1986) (en banc); *Frausto v. State,* 642 S.W.2d 506, 509 (Tex.Crim.App. [Panel Op.] 1982). The State may properly inform the members of the venire of the range of punishment available should they find that the accused had prior convictions. *Frausto,* 642 S.W.2d at 509. The prosecutor's asking the members of the panel whether they could assess the minimum twenty-five years *if* they could assess that punishment in a hypothetical case was therefore proper. The trial court properly overruled appellant's motion to quash the jury panel. Appellant's fifth point of error is overruled.

Appellant's sixth and seventh points of error concern the propriety of the trial court's instructing the jury on the law of parole pursuant to TEX.CODE CRIM. PROC.ANN. art. 37.07 § 4 (Vernon sup. 1988). In *Rose v. State,* 752 S.W.2d 529 (Tex.Crim.App., June 15, 1988) (opinion on court's own motion for rehearing, en banc), a majority of the court of criminal appeals held Article 37.07 § 4(a) unconstitutional because it violated the separation of powers and due course of law provisions of the Texas Constitution. The trial court's instructing the jury on the law of parole therefore amounted to error.

But to assess whether the instruction amounted to reversible error, this court must now apply TEX.R.APP.P. 81(b)(2). *See Rose,* 752 S.W.2d at 532. Applying a Rule 81(b)(2) analysis, this court must reverse the judgment of the trial court based on the erroneous parole instruction, unless we conclude beyond a reasonable doubt that the instruction made no contribution to the punishment the jury assessed. *See Rose,* 752 S.W.2d at 532. Here, the trial court instructed the jury that if it found the allegations of both enhancement paragraphs true, it could assess a maximum sentence of life imprisonment and a ten thousand dollar fine, and a minimum sentence of twenty-five years. The jury assessed a forty-nine year term of confinement. This was a reasonable punishment, given the aggravated nature of the robbery committed against Meridia.

Moreover, the trial court concluded its punishment charge with instructions similar to those the *Rose* court found helpful in diminishing the harm of the erroneous parole law instructions in that case. *See Id.* Here the trial court specifically charged the jury not to consider either the existence or effect of either the parole law or good conduct time on any sentence they might assess. The court also indicated the application of the parole law and good conduct time was a matter for the prison and parole authorities. *See Rose,* 752 S.W.2d at 532. This court must presume the jury members followed that instruction. *Id.*

Based on the court's curative instructions, the sentence the jury actually assessed, and the facts of appellant's case, we determine beyond a reasonable doubt that the court's error in instructing the jury pursuant to TEX.CODE CRIM.PROC. ANN. 37.07 § 4(a) made no contribution to the forty-nine year punishment assessed. TEX.R.APP.P. 81(b)(2). Appellant's sixth and seventh points of error are overruled.

Appellant has attempted to raise an additional point of error challenging the finality of a prior conviction by means of a pro se brief filed with this court. Because an accused is not entitled to hybrid representation, appellant's *pro se* brief presents nothing for review. *Rudd,* 616 S.W.2d at 625. Moreover, having examined the contents of appellant's brief, we find no error that demands consideration in the interests of justice.

The judgment of the trial court is affirmed.