**Reversed and Acquitted and Majority and Dissenting Opinions filed September 29, 2011.**



In The

# Fourteenth Court of Appeals

---

### NO. 14-10-00461-CR

---

**JIMMIE GROSS, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from the 183rd District Court**
**Harris County, Texas**
**Trial Court Cause No. 1085393**

---

## MAJORITY OPINION

Appellant Jimmie Gross appeals his conviction for murder under the law of parties. Because the evidence is insufficient to support appellant's conviction for murder under law of parties, we reverse the conviction and render judgment of acquittal.

On September 4, 2006, the complainant, Corkney Lee, was shot and killed by appellant's brother-in-law John Jones. Appellant, who was charged with murder of Lee, testified at Jones's murder trial. Jones was convicted of the murder of Lee. Subsequently, at appellant's trial for murder, the State read into the record the transcript of appellant's testimony from Jones's murder trial.

According to appellant's testimony, he and Jones were in a white Dodge Ram truck in the right hand lane at a stoplight. The female passenger of a vehicle in the left lane signaled for appellant to roll down his window. Lee, who was driving, asked appellant, "Do you know me?" Appellant responded, "No, I don't." Lee asked appellant, "Well, why are you watching me?" Appellant responded, "I'm not." This exchange continued until Lee asked appellant to pull into a gas station. Appellant complied.

Once at the gas station, appellant and Lee resumed their "verbal altercation" and exited their vehicles. Less than a minute later, Jones got out of the truck. Appellant testified that he did not know that Jones had gotten out of truck until Lee started running toward the store. At that moment, appellant looked back to see Jones raising a 12-gauge shotgun to his chest and pointing it in his and Lee's direction. Appellant yelled, "No, no," and ran back to the truck.

---

[1] The background recited here derives from appellant's testimony from Jones's trial that was read to the jury in this case. Though the jury might have disregarded some or all of this account, there is no other account of the crime. Other than appellant, no eye witnesses testified. One investigating officer interviewed witnesses and his complete testimony, which is consistent with appellant's account, is as follows: "We learned that [the crime] appeared to be involving some sort of altercation between two vehicles where the victim and his girlfriend were involved in an altercation with two other males in another car, a white Dodge Ram pickup. The altercation moved from the roadway into the convenience store area where the crime actually occurred where the individuals got out of the car and exchanged words again, specifically the driver of the white Dodge Ram and the victim in this case, Corkney Lee. When they did so, the passenger in the pickup truck got out of the car and fired one time striking and killing our victim."

Appellant testified that he had been carrying the shotgun, which he claimed belonged to someone else, on the backseat of his truck for six to twelve months; the shotgun was unloaded but had ammunition stored in its "stock."

Appellant heard the shotgun, but claims he did not see Jones fire it or know that anyone had been shot. Appellant panicked, and he and Jones left the scene in appellant's truck. Appellant dropped off Jones, with the shotgun, at Jones's grandmother's house. Appellant drove back to the gas station where he saw eight or nine police cars and someone lying in the door of the store. When appellant found out that someone had been killed, he became "scared" and "panicked" and left gas station. Lee died of multiple gunshot pellet wounds to the back.

Appellant called a friend who was an officer with the Houston Police Department the next morning. On that friend's advice, appellant contacted an attorney who had previously represented him in a misdemeanor case. That attorney testified that he advised appellant not to "answer any questions without me being present."[2]

One of the HPD investigators testified that a break in the case came from a Crime Stoppers' tip, giving the police appellant's name. The police learned that appellant had recently purchased a white Dodge Ram pickup truck. When contacted by the police for information two days after the murder, appellant said that he was not involved. Subsequently, a confidential informant told a police detective he had heard appellant admit to his involvement in the case. On September 18, 2006, two weeks after the murder, the police arrested appellant. When questioned, appellant denied his involvement in the murder and did not mention Jones's name. Appellant was identified by witnesses in a "mock lineup" in the city jail and charged with murder. The jury found appellant guilty of murder under "law of parties." The trial court ordered a presentence investigation report and recessed the case for punishment. At the end of punishment hearing, the trial court sentenced appellant to ten years' confinement.

---

[2] The attorney was no longer representing appellant on the murder charge at the time of trial.

3

In his first issue, appellant contends that the evidence is legally and factually insufficient to sustain his conviction for murder under the law of parties. The Texas Court of Criminal Appeals held that the *Jackson v. Virginia*, 443 U.S. 307 (1979), legal sufficiency standard is the only standard to evaluate the sufficiency of the evidence in a criminal case. *Brooks v. State*, 323 S.W.3d 893, 895 (Tex. Crim. App. 2010) (plurality opinion); *id.* at 926 (Cochran, J., concurring). Accordingly, we review the sufficiency of the evidence in this case under a rigorous and proper application of the *Jackson v. Virginia* sufficiency standard. *Brooks*, 323 S.W.3d at 906 (plurality opinion).

When reviewing the sufficiency of the evidence, we view all of the evidence in the light most favorable to the verdict and determine, based on that evidence and any reasonable inferences from it, whether any rational fact finder could have found the elements of the offense beyond a reasonable doubt. *Gear v. State*, 340 S.W.3d 743, 746 (Tex. Crim. App. 2011); *see also Jackson*, 443 U.S. at 319. The jury is the exclusive judge of the credibility of witnesses and the weight to be given to the evidence. *See Isassi v. State*, 330 S.W.3d 633, 638 (Tex. Crim. App. 2010). Further, we defer to the jury's responsibility to fairly resolve or reconcile conflicts in the evidence. *Id.* We draw all reasonable inferences from the evidence in favor of the verdict. *Id.* This standard applies to both circumstantial and direct evidence. *Id.*

A person commits the offense of murder if he "intentionally or knowingly causes the death of an individual." TEX. PENAL CODE ANN. § 19.02(b)(1) (West 2011). A person is criminally responsible as a party to an offense if the offense is committed by his own conduct, by the conduct of another for which he is criminally responsible, or both. TEX. PENAL CODE ANN. § 7.01 (West 2011). A person is criminally responsible for an offense committed by the conduct of another if, acting with intent to promote or assist the commission of the offense, he or she solicits, encourages, directs, aids, or attempts to aid

4

the other person to commit the offense. TEX. PENAL CODE ANN. § 7.02(a)(2) (West 2011).

Because appellant is not the principal actor, the State must prove conduct constituting an offense, plus an act committed by appellant with intent to promote or assist such conduct. *See Beier v. State*, 687 S.W.2d 2, 3 (Tex. Crim. App. 1985). In determining whether the accused participated as a party, the court may look to events occurring before, during, and after the commission of the offense, and may rely on actions of the defendant that show an understanding and common design to do the prohibited act. *Ransom v. State*, 920 S.W.2d 288, 302 (Tex. Crim. App. 1994) (op. on reh'g); *Cordova v. State*, 698 S.W.2d 107, 111 (Tex. Crim. App. 1985). Because an agreement between the parties to act together in a common design can seldom be proven by words, the State often must rely on the actions of the parties showing an understanding and common design to commit the offense. *Brooks v. State*, 580 S.W.2d 825, 832 (Tex. Crim. App. 1979). Circumstantial evidence may be used to prove the defendant is a party to an offense. *Cordova*, 698 S.W.2d at 111; *Wygal v. State*, 555 S.W.2d 465, 469 (Tex. Crim. App. 1977). Any agreement to accomplish a common purpose must have been made before or contemporaneously with the criminal event. *Cordova*, 698 S.W.2d at 111; *Beier*, 687 S.W.2d at 3–4; *Urtado v. State*, 605 S.W.2d 907, 911 (Tex. Crim. App. 1980).

The State argues evidence that appellant assisted Jones in fleeing from the scene by serving as the getaway driver and disposing of the murder weapon, and by refusing to come forward and denying his involvement is sufficient to support his conviction for murder under law of parties.[3] However, all of the acts by appellant upon which the State

---

[3] The dissent argues an alternate theory of sufficiency of the evidence, characterizing appellant and his brother-in-law as "a pair of hotheads with a gun" acting as cohorts "from start to finish." This rendition of facts is colorful but derives from nothing in the record beyond (1) appellant's presence at the scene, and (2) his verbal altercation with the complainant. If, as the dissent urges, appellant's presence and verbal altercation with the complainant amount to an appropriate inference that appellant provided a distraction to facilitate the murder, presence will always be sufficient to convict under the law of parties. The mere fact that a jury is willing to indulge an inference does not make it an appropriate inference;

5

relies occurred *after* Jones shot Lee. "Acts done after the [offense] was completed [do] not make [the accused] a party to the offense." *Morrison v. State*, 608 S.W.2d 233, 235 (Tex. Crim. App. 1980).

While appellant was present when Jones shot Lee and fled from the gas station immediately thereafter, such facts are not sufficient without more to sustain his conviction for murder under law of parties. *See Thompson v. State*, 697 S.W.2d 413, 417 (Tex. Crim. App. 1985) ("[M]ere presence of a person at the scene of the crime, either before, during, or after the commission of the offense, or even flight from the scene, without more, is insufficient to sustain a conviction of one as a party to the offense."); *Valdez v. State*, 623 S.W.2d 317, 321 (Tex. Crim. App. 1979) (same). Only when combined with other incriminating evidence may such facts be sufficient to sustain a conviction. *Thompson*, 697 S.W.2d at 417; *Valdez*, 623 S.W.2d at 321. Here, there are no other facts making such evidence sufficient to support appellant's conviction.

The State argues that appellant's driving the getaway car and helping Jones dispose of the weapon are sufficient to support his conviction. While the undisputed evidence shows that appellant drove Jones away from the scene of the offense and that Jones took the shotgun with him when appellant dropped him off at his grandmother's house, this is not sufficient to support a murder conviction. Standing alone, proof that an accused assisted the primary actor in making his getaway is insufficient, even though the accused's conduct may constitute the independent offense of hindering apprehension or prosecution. *Scott v. State*, 946 S.W.2d 166, 168 (Tex. App.—Austin 1997, pet. ref'd); *see also Urtado*, 605 S.W.2d at 912 (explaining that former Penal Code provision that an accessory was a party to a crime has been eliminated and is now the separate and distinct crime of hindering apprehension or prosecution).

---

otherwise, appellate review of legal sufficiency would become unnecessary. Under the undisputed facts in this case appellant committed other, lesser, uncharged offenses. Appellate courts cannot stretch beyond an appropriate treatment of evidence to affirm a conviction where no reasonable jury could convict of the crime actually charged.

The State relies on a Court of Criminal Appeals opinion and an opinion from this court in support of its getaway-driver theory. *See Thompson*, 697 S.W.2d at 417; *Webber v. State*, 757 S.W.2d 51 (Tex. App.—Houston [14th Dist.] 1988, pet. ref'd). However, the State's reliance on *Thompson* and *Webber* are misplaced as the evidence in both cases included incriminating facts that went to the respective defendants' conduct before the offenses as well as after the offenses.

In *Thompson*, the defendant was found guilty of aggravated robbery as a party to the offense that was committed by Jerry Wayne Fears. *See* 697 S.W.2d at 414. The evidence also showed that, prior to the robbery, the defendant had parked the car she was driving that day in front of the complainant's place of business for an unreasonable length of time, that she was near the complainant's place of business after the robbery, and that, not too long after the robbery, the defendant, while accompanied by Fears, was arrested for speeding. *Id.* at 417. There was conflicting testimony concerning the finding of the pistol used by Fears in the robbery, and the jury was free to believe that the defendant led the police to that pistol. *Id.* As to evidence that the defendant had $200 on her when she was arrested, the jury was also free to believe or disbelieve that the money came from the robbery. *Id.* Holding that those circumstances were sufficient to warrant any rational trier-of-fact's finding the defendant guilty as a party to the offense committed by Fears, the court explained that it had incriminating facts that went to the defendant's conduct both before and after the commission of the offense. *Id.*

In *Webber*, the appellant was found guilty as a party to offense of aggravated robbery. 757 S.W.2d at 52. A witness identified the defendant as driving the car that dropped off the robber near a service station before the robbery, parking the car in a dark spot on the street, and inching the car forward without lights, and the witness saw the robber jump into the car after the robbery. *Id.* at 55.

7

Similarly, *Hoang v. State*[4] and *Hernandez v. State*,[5] both relied upon by the dissent, are distinguishable. In *Hoang*, the evidence showed that the defendant, who was driving and intoxicated, fired his Glock firearm into the air as his car entered the Southwest Freeway. 263 S.W.3d at 23. Anthony, a passenger in the defendant's car who was also intoxicated, became angry at the slow driver in front of the defendant's car and asked the defendant for the gun and to "pull up." *Id.* The defendant then handed Anthony the gun and drove his car parallel to the slow driver's car, while Anthony unloaded nine rounds into the complainant's car, killing the complainant. *Id.* The court held that this evidence established that the defendant assisted Anthony by giving him the loaded firearm and driving his car parallel to, close to, and about the same speed as the complainant's car, enabling Anthony to be in a position to shoot the complainant accurately and repeatedly. *Id.*

In *Hernandez*, the defendant was convicted of capital murder as a party. 171 S.W.3d at 351. By the defendant's own admission, he and Pena planned to rob the complainant by confronting the complainant, subduing him, and taking his guns. *Id.* at 355. The defendant testified that part of the plan was to have Pena and the complainant smoke crack cocaine before wrestling the complainant down and tying him up. *Id.* On those facts, the jury was entitled to find that the defendant should have anticipated that one of the many parts of his plan—whether it be smoking crack cocaine, subduing the complainant, or stealing the complainant's guns—could result in the complainant being shot with one of his own guns. *Id.*

The dissent also relies on *Guevara v. State* for the proposition that appellant's failure to notify the police of his involvement supports an inference that he was attempting to mislead investigators about his role. *See* 297 S.W.3d 350 (Tex. App.—San Antonio 2009, pet ref'd). However, in that case, there was ample evidence that the

---

[4] *See* 263 S.W.3d 18 (Tex. App.—Houston [1st Dist.] 2006, pet. ref'd).

[5] *See* 171 S.W.3d 347 (Tex. App.—Houston [14th Dist.] 2005, pet. ref'd).

defendant and the primary actor, Minnie Salinas, planned the murder of the defendant's wife. The defendant was having an affair with Salinas, who issued an ultimatum to the defendant shortly before victim was killed. *Id.* at 354. The jury could infer that the defendant lied to the police about his relationship with Salinas to distance himself from her and mislead police about his role in planning the murder. *Id.* at 359. Shortly before the murder, the defendant took Salinas to a shooting range where they both fired a nine millimeter gun—the same type of gun used to kill the victim. *Id.* Also, the defendant had researched on the internet how to make a silencer; no one at the victim's apartment complex heard a gunshot. *Id.* at 360. An alibi witness thought it was strange that the defendant asked him to play golf, on the morning of the murder, on a regulation golf course when the witness was an amateur golfer. *Id.* Although three bullets were fired at the crime scene, only one casing was found there—two shell casings matching one casing that was left behind were found in the defendant's vehicle. *Id.* at 359–60. Thus, the court held that that jury could have inferred that the defendant and Salinas were acting together to murder the victim. *Id.* at 359.

Simply because actions or events occurring after the event are relevant to show pre-existing intent does not mean those actions or events may form the basis for solicitation, encouragement, direction, aid, or an attempt to aid. *See Morrison*, 608 S.W.2d at 235 ("Acts done after the [offense] was completed [do] not make [the accused] a party to the offense."). Post-offense conduct alone cannot form the basis for aiding or encouraging the completed offense. *See Brooks*, 580 S.W.2d at 831 ("[T]he evidence must show that *at the time of the commission of the offense* the parties were acting together, each doing some part of the execution of the common purpose.") (emphasis supplied). The "acting together" need not rise to the level of agreement. *Bragg v. State*, 73 Tex. Crim. 340, 166 S.W. 162, 163 (1914). However, the parties must be acting together to accomplish their common purpose. *Wygal*, 555 S.W.2d at 469; *Christensen v. State*, 240 S.W.3d 25, 31 (Tex. App.—Houston [1st Dist.] 2007, pet ref'd) (op. on reh'g). Thus, for a defendant to be considered a party to an offense, he must commit some

9

culpable act before or during the commission of the offense. *Morrison*, 608 S.W.2d at 235; *see also Cordova*, 698 S.W.2d at 111 (explaining that any agreement to accomplish a common purpose must have been made before or contemporaneously with the criminal event).

Even indulging the inferences that Jones (1) was involved in the altercation while the parties were still in their vehicles, and (2) knew that appellant kept a shotgun in his truck, as the jury was entitled to do, these inferences do not support a prior or contemporaneous plan to shoot Lee once the altercation moved to the gas station. Any conclusion to the contrary is based on mere speculation. *See Hooper v. State*, 214 S.W.3d 9, 16 (Tex. Crim. App. 2007) ("Speculation is mere theorizing or guessing about the possible meaning of facts and evidence presented. A conclusion reached by speculation may not be completely unreasonable, but it is not sufficiently based on facts or evidence to support a finding beyond a reasonable doubt. . . . [Juries] are not permitted to draw conclusions based on speculation."). Moreover, evidence that a person simply handed the deadly weapon to the attacker does not in and of itself show intent to commit murder; intent can only be inferred from handing the attacker the deadly weapon if other circumstances warrant. *Hoang*, 263 S.W.3d at 22; *Navarro v. State*, 776 S.W.2d 710, 714 (Tex. App.—Corpus Christi 1989, pet. ref'd). Here, no other circumstances exist that would warrant an inference of intent.

There is no evidence—direct or circumstantial—of Jones and appellant's "acting together" pre-murder. There is no evidence that appellant assisted Jones before Jones loaded the shotgun, got out of truck, aimed the shotgun at Lee, and pulled the trigger. Viewing the evidence in the light most favorable to the jury's verdict, no rational trier of fact could have found appellant guilty as a party to Lee's murder beyond a reasonable doubt. Thus, the evidence is insufficient to support appellant's conviction. We sustain appellant's first issue.

10

Having sustained appellant's first issue, we reverse and render a judgment of acquittal.[6]

/s/          Sharon McCally
               Justice

Panel consists of Justices Frost, Jamison, and McCally (Frost, J. dissenting).

Publish — TEX. R. APP. P. 47.2(b).

---

[6] In light of our disposition, we need not address appellant's remaining issue claiming ineffective assistance of counsel.