COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

ANDRES ZUBIA, §

§ No. 08-09-00309-CR

Appellant, §

§ Appeal from

v. §

§ 171st District Court

§

THE STATE OF TEXAS, § of El Paso County, Texas

§

Appellee. § (TC# 20070D04697)

§

## O P I N I O N

Andres Zubia was tried by a jury, found guilty, and convicted of robbery. In accordance with Appellant's election, the jury assessed punishment and sentenced him to twelve years' confinement. For the reasons that follow, we affirm.

### FACTUAL SUMMARY

The indictment charged that on or about September 29, 2007, Appellant:

[W]hile in the course of committing theft and with the intent to obtain and maintain control of property intentionally, knowingly, and recklessly cause bodily injury to PENNIE STONE by dragging PENNIE STONE with a motor vehicle.

Prior to trial, the State gave notice of its intent to introduce extraneous offenses, including evidence that Appellant was a Barrio Azteca gang member and had acted in furtherance of the purposes of that gang.

On September 29, 2007, Jean Kuttner and her daughter Pennie Stone went shopping at Costco in central El Paso. Around 1:30 p.m., the women exited the store and headed to their truck to load the groceries. Kuttner stood next to the vehicle and held the shopping cart, which contained her oxygen tank and Stone's purse, while Stone opened the tailgate. Suddenly,

Kuttner felt something hit her and throw her sideways. She initially thought she had been hit by a car, but then she felt an arm around her neck and someone grabbed her daughter's purse. Kuttner yelled to her daughter. Stone took off running after the purse snatcher who was later identified as David Trejo.

After Trejo grabbed Stone's purse, he ran straight ahead across about three rows of parked cars, "straight back from the end gate. Kuttner was following her daughter and saw a small black SUV come "flying up" in the parking lot. The vehicle pulled up directly in front of Trejo's path and came to an abrupt stop. The driver of the SUV, later identified as Appellant, reached over to open the door so that Trejo could quickly enter the vehicle.

By this time, Stone had managed to grab her purse strap and the back of Trejo's neck. She continued to hold on as Trejo climbed in the SUV. The vehicle took off at a high rate of speed with Stone halfway inside the car and still holding on to Trejo and her purse strap. Kuttner witnessed Stone's legs become tangled and watched her lose her footing, causing Stone to be "drug along" by the vehicle. When Stone finally fell to the ground, one of the SUV's tires ran over her leg, but the vehicle continued driving away at a high rate of speed. At trial, Kuttner was unable to personally identify Appellant as the driver.

On cross-examination, Kuttner admitted that she could not actually see whether Appellant's hand was on the door handle. However, she remained confident in her assertion that she saw the driver lean over and open the door for Trejo. Defense counsel challenged that since there was no way she could actually see Appellant's hand on the inside door handle, it was impossible for her to tell whether Appellant was trying to open the door or to keep the door closed. In response Kuttner testified, "Well, it was closed until he bent over and threw it open."

Stone also testified at trial. She and her mother were about to load groceries when she saw a man reach into the cart and simultaneously heard her mother saying, "he's grabbing your purse." Stone took off running after the man. She too testified that Trejo ran straight across three rows of parked vehicles. Stone caught up with him and grabbed his arm with one hand and her purse with the other. Stone then saw a car "come zipping up the aisle." She identified Appellant as the driver of the vehicle, and claimed she saw Appellant lean over and open the door for Trejo. When Trejo jumped in, Stone was still holding on to her purse and she ended up halfway inside the SUV with one arm entangled in her purse strap. As the car drove off and Stone attempted to run alongside it, Trejo yanked on her purse, trying to break the purse free from her grip. He eventually succeeded and she fell to the ground.

Detective Jose Baca testified at that he was off duty and shopping at Costco on the day in question. As he was parking his car, he witnessed a man later identified as Trejo take a purse from a woman and then run through the parking lot. At that point, he reversed his vehicle and drove down one of the aisles, keeping an eye on Trejo. He saw a black SUV, "intentional[ly] slowing down so the guy running could get in the vehicle." Detective Baca watched Stone catch up to Trejo and saw Trejo jump into the SUV. Detective Baca then called in the incident to police communications. He provided a description of Trejo and a license plate identification of the SUV. During that time, Detective Baca continued to pursue the SUV.

The SUV drove quickly through the parking lot, which was heavily congested with traffic and pedestrians. It drove down a number of side streets and ran a couple of red stop lights along the way. After a while, the SUV slowed down slightly and Trejo threw a purse out the window. Baca stopped and retrieved the purse and then continued his pursuit of the SUV into the Villa Allegre Apartments.

Once inside the apartment complex, Trejo exited the vehicle and took off running. Detective Baca followed him and yelled for him to stop, but Trejo kept running and Detective Baca eventually lost sight of him. Baca then drove around the apartment complex until he saw the black SUV. When Baca found the vehicle, Appellant was standing beside it. At trial, Detective Baca identified Appellant as the driver.

The jury charge recited that Appellant had been indicted for robbery and instructed the jury to find Appellant guilty if they found, beyond a reasonable doubt that Appellant:

> [E]ither acting alone or with others as a party, as that term has been defined, did [then] and there while in the course of committing theft, and with the intent to obtain and maintain control of the property intentionally, knowingly or recklessly, caused bodily injury to Pennie Stone by dragging Pennie Stone with a motor vehicle.

The charge included several definitions as well as the following instruction on criminal responsibility and transferred intent:

> A person is criminally responsible for a result that would not have occurred but for his conduct operated either alone or concurrently with another cause, unless the concurrent cause was clearly sufficient to produce the result of the conduct of the act is clearly insufficient.

> A person is nevertheless criminally responsible for causing a result if the only difference between what actually occurred and what he desired, contemplated, or risked if that a different offence [sic] was committed or a different person or property was injured, harmed or otherwise affected. A person is criminally responsible as a party to an offense if the offense is committed by his own, by the conduct of another for which he is criminally responsible or by both.

The charge also included an instruction on the law of the parties:

> Each party to an offense may be charged with the commission of the offense.

> A person is criminally responsible for an offense committed by the conduct of another if, acting with intent to promote or assist the commission of the offense, he solicits, encourages, directs, aids, or attempts to aid the other person to commit the offense.

> Mere presence alone will not make a person a party to an offense.

- 4 -

In a prosecution in which a defendant's criminal responsibility is based on the conduct of another, the defendant may be convicted on proof of commission of the offense, and that he was a party to its commission, and it is no defense that the person for whose the conduct the defendant is criminally responsible has not been prosecuted, convicted or is given immunity from prosecution.

After deliberations, the jury returned its verdict finding Appellant guilty of robbery, as charged.

During the punishment phase, the State presented evidence that Appellant and Trejo had been and currently were members of the Barrio Azteca prison gang. The State also presented evidence of Appellant's four prior criminal convictions.

Appellant brings three issues for review. In Issue One, he challenges the legal sufficiency of the evidence to support his robbery conviction. In Issue two, he complains that he was denied due process of law because the trial court deprived him of his ability to argue his defense to the jury. Finally, in Issue Three, Appellant argues that the trial court erred during the punishment phase by allowing the State to admit evidence of wrongful conduct without providing proper notice.

**LEGAL SUFFICIENCY**

In Issue One, Appellant maintains that the evidence is insufficient to support his conviction for robbery as a matter of law because there is no evidence that he aided in the theft component and/or the assaultive component of the robbery offense. He also contends that there is no evidence demonstrating his awareness that Trejo had either committed or attempted to commit a theft.

In a legal sufficiency review, we review all the evidence in the light most favorable to the verdict and determine whether any rational juror could have found all of the essential elements of the offense beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 318-19, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *Villarreal v. State*, 286 S.W.3d 321, 327 (Tex.Crim.App. 2009);

*Hooper v. State*, 214 S.W.3d 9, 13 (Tex.Crim.App. 2007). On appeal, we consider all admitted evidence regardless of whether it was admissible or inadmissible. *Clayton v. State*, 235 S.W.3d 772, 778 (Tex.Crim.App. 2007); *Wilson v. State*, 7 S.W.3d 136, 141 (Tex.Crim.App. 1999). Although we consider all evidence presented, we may not re-weigh the evidence and substitute our judgment for that of the fact finder. *King v. State*, 29 S.W.3d 556, 562 (Tex.Crim.App. 2000). In conducting our review, we must give deference to "the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Jackson*, 443 U.S. at 318-19, 99 S.Ct. at 2789; *Brooks v. State*, 323 S.W.3d 893, 899 (Tex.Crim.App. 2010).

A person commits the offense of robbery if, in the course of committing a theft and with the intent to obtain or maintain control of the property, he intentionally, knowingly, or recklessly causes bodily injury to another. TEX.PEN.CODE ANN. § 29.02(a)(1)(West 2011). "In the course of committing theft," is defined as, "conduct that occurs in an attempt to commit, during the commission, or in immediate flight after the attempt or commission of theft." TEX.PEN.CODE ANN. § 29.01(1).

As we have noted, the jury charge included an instruction on the law of parties. Under the law of parties, a person is criminally responsible for the conduct of another if, "acting with intent to promote or assist the commission of the offense, he solicits, encourages, directs, aids, or attempts to aid the other person to commit the offense." TEX.PEN.CODE ANN. § 7.02(a)(2)(West 2011). The evidence must show that at the time of the offense, the parties were acting together, each contributing toward the execution of a common purpose. *McKinney v. State*, 177 S.W.3d 186, 197 (Tex.App.--Houston [1st Dist.] 2005, pet. granted), *citing Ransom v. State*, 920 S.W.2d 288, 302 (Tex.Crim.App. 1994). "In determining whether a defendant

participated in an offense as a party, the court may look to events occurring before, during, and after the commission of the offense, and may rely on actions of the defendant which show an understanding and common design to do the prohibited act." *Ransom*, 920 S.W.2d at 302, *citing Cordova v. State*, 698 S.W.2d 107, 111 (Tex.Crim.App. 1985), *cert. denied*, 476 U.S. 1101, 106 S.Ct. 1942, 90 L.Ed.2d 352 (1986). Party status may be proven through circumstantial evidence. *Ransom*, 920 S.W.3d at 302.

Appellant does not dispute that he drove the black SUV, which effectively served as the getaway vehicle, nor does he dispute that Trejo committed an offense. Instead, he contends that there is no evidence that Appellant "aided in the entire offense, that is, both the theft and the assaultive components of the charged robbery."

At trial, the jury heard testimony from Kuttner, Stone, and Detective Baca. Kuttner and Stone both testified that after grabbing the purse, Trejo ran straight across three rows in the crowded parking lot and directly toward the spot where Appellant, driving quickly, pulled up. Detective Baca testified that Appellant slowed down, "actually like intentional slowing down so the guy running could get in the vehicle," and all three witnesses testified that Appellant threw open the door for Trejo to get inside and then sped off at a high rate of speed. Additionally, Detective Baca followed the SUV from the parking lot and told the jury that Appellant took several side streets and ran a few red lights.

Appellant concedes that Detective Baca's testimony "may indicate an intent to facilitate the flight." But he further argues that absent any evidence that he knew that Trejo had committed or attempted to commit a theft, the evidence is insufficient to prove that Appellant aided the flight to facilitate the crime. In support of his argument, Appellant relies on *Scott v. State*, 946 S.W.2d 166 (Tex.App.--Austin 1997, pet. ref'd). There, the defendant was driving a

vehicle with several passengers, one of whom had a gun. *Scott*, 946 S.W.2d at 168; *Faz v. State*, No. 03-99-00823-CR, 2001 WL 101508, at *5 (Tex.App.--Austin, Feb. 8, 2001, pet. ref'd)(not designated for publication). The passengers asked the defendant to pull over behind some apartments while they ran into a store. The defendant complied and stayed in the vehicle listening to music while the passengers went inside. *See Scott*, 946 S.W.2d at 168; *Faz*, 2001 WL 101508, at *5. The driver did not have a view inside the store. *See Scott*, 946 S.W.2d at 168; *Faz*, 2001 WL 101508, at *5. A short time later, the passengers returned to the vehicle and told the defendant to go. *See Scott*, 946 S.W.2d at 168; *Faz*, 2001 WL 101508, at *5. Once the defendant was driving away, the passengers told him they had robbed the store, there had been a shooting, and they had $100. *See Scott*, 946 S.W.2d at 168-69; *Faz*, 2001 WL 101508, at *5. The jury charge instructed the jury that to find the defendant guilty, it must find beyond a reasonable doubt that the defendant entered into an agreement and a conspiracy with the co-defendants to commit the offense of robbery. *See Faz*, 2001 WL 101508, at *5. The court of appeals held that the evidence was legally insufficient to convict the defendant as a party because there was no evidence that he agreed to become a party to the offense by acting as a lookout driver. *See Scott*, 946 S.W.2d at 170.

Contrary to Appellant's assertion, *Scott* does not stand for the proposition that, standing alone, proof that an accused was present at the scene of the crime or assisted the primary actor in making his getaway is insufficient. In fact, several courts have found evidence showing a defendant drove the getaway car after a robbery is legally sufficient to uphold a conviction as a party to the offense. *See Thompson v. State*, 697 S.W.2d 413, 417 (Tex.Crim.App. 1985), *overruled on other grounds by Ex parte Patterson*, 969 S.W.2d 16 (Tex.Crim.App. 1998); *Webber v. State*, 757 S.W.2d 51, 55-56 (Tex.App.--Houston [14th Dist.] 1988, pet. ref'd)(where

a witness testified that the robber was dropped off from the same car in which he later fled, saw the appellant inching his car forward with the lights off, and saw someone inside the car making room for the robber before the car sped away, the evidence was legally sufficient to show appellant drove the getaway car and therefore committed an act which aided the robber in committing aggravated robbery).

In viewing all the evidence in the light most favorable to the verdict, the jury could have rationally concluded, beyond a reasonable doubt, that Appellant was a party to the offense. The jury heard testimony that Appellant saw Trejo running toward his vehicle with a woman's purse in hand and a woman chasing behind him; he pulled up, leaned over to open the door; and then sped away while Stone was still grabbing onto her purse. Because the evidence is legally sufficient to sustain the conviction, we overrule Issue One.

## IMPROPER DENIAL OF JURY ARGUMENT

In Issue Two, Appellant argues the trial court deprived him of his constitutional right to due process of law because he was not allowed to argue his defensive theory to the jury. This argument is based the trial court's decision to sustain an objection made by the State during defense counsel's closing argument, and a subsequent instruction to disregard.

The trial court has broad discretion in controlling the scope of closing argument. *See Lemos v. State*, 130 S.W.3d 888, 892-93 (Tex.App.--El Paso 2004, no pet.). However, a criminal defendant's right to counsel includes his right to have his theory of the case argued vigorously to the jury, and the trial court may not prevent defense counsel from making a point essential to the defense. *See id*. That said, only when the trial court restricts counsel from making an argument that he was legally entitled to make, is it considered a deprivation of counsel. *See id*., *citing McGee v. State*, 774 S.W.2d 229, 238 (Tex.Crim.App. 1989), *cert. denied*, 494 U.S. 1060, 110

S.Ct. 1535, 108 L.Ed.2d 774 (1990); *Jackson v. State*, 992 S.W.2d 469, 476 (Tex.Crim.App. 1999).

There are four categories of proper jury argument: (1) summation of the evidence; (2) reasonable deduction from the evidence; (3) an answer to the argument of opposing counsel; and (4) a plea for law enforcement. *See Berry v. State*, 233 S.W.3d 847, 859 (Tex.Crim.App. 2007). Defense counsel has the legal right to argue any theory supported by the evidence, including all inferences from the evidence that are legal, fair, and legitimate. *Brown v. State*, 955 S.W.2d 276, 279 (Tex.Crim.App. 1997); *Melendez v. State*, 4 S.W.3d 437, 442 (Tex.App.--Houston [1st Dist.] 1999, no pet.), *overruled on other grounds by Small v. State*, 23 S.W.3d 549 (Tex.App.--Houston [1st Dist.] 2000, pet. ref'd). To determine whether an argument falls within one of the four categories, we consider the argument in light of the entire record. *Magana v. State*, 177 S.W.3d 670, 674 (Tex.App.--Houston [1st Dist.] 2005, no pet.).

The following summarizes the events which transpired during Appellant's closing argument and formed the basis for this issue on appeal:

> [Defense Counsel]: When I talked to Juror Number 20 during voir dire and I asked him about that situation if we went down to the grocery store and I wanted to buy a six pack of beer and we were friends. I go in and I rob the store, the next thing you know I told him, Hey I just robbed the store and that's why we are both getting arrested. You know at least in that scenario you knew that me and him were friends. Okay. You knew that, at the least, and that would really help. You don't know that here. You don't know anything about this. This is just a guy who is present when another guy runs into his car.

At that point the State objected and, before stating the basis of the objection, asked to approach the bench.

> [Prosecutor 1]: He needs to realize that he has just waived his client's Fifth Amendment Right. He just opened the door to everything.
>
> [Defense Counsel]: I did not.

[Prosecutor 1]: He's testifying for the defendant now. You are not allowed to hide behind that, come in and testify in closing because the State is at least allowed to rebuttal to explain that he opened the door.

[The Court]: Well, I am not going to allow it. I will ask them to disregard your argument.

[Defense Counsel]: I told the jury what the evidence has shown today.

[Prosecutor 2]: It leaves a false impression, we have to prove or --

[The Court]: Keep it down. I know -- I prohibited them from bringing in the gang affiliation that was a motion in limine. I am going to ask them to disregard the last statement.

At that point the bench conference concluded and the trial court sustained the State's objection for the record and asked the jury to "disregard that last statement made by this attorney."

On appeal, Appellant refers to this exchange as a "bizarre colloquy." He contends that, "[s]omehow, the prosecutor convinced the trial judge that the defense argument was improper as a waiver of Appellant's right not to testify," and he refers to the State's objection as a "truly bizarre objection that has no logical force or effect." Appellant asserts that his statement that, "[t]his is just a guy who is present when another guy runs into his car," was simply stating his defense to the jury - that he was not a party to the offense. He argues further that by instructing the jury to disregard his argument, the trial court "told the jury to find Appellant guilty."

As the State points out, the record reflects several attempts by the defense to argue that Appellant and Trejo did not know each other. The record also reflects that after discussing the issue, defense counsel refrained from taking any action to back up his inferences that Appellant and Trejo did not know each other, presumably to avoid opening the door and allowing the State to rebut the defensive theory by introducing evidence that the two men knew each other through their shared gang affiliation.

- 11 -

The essential question is whether the trial court abused its discretion when it instructed the jury to disregard defense counsel's statement. There was no direct evidence that Appellant and Trejo did not know each other. Therefore, the trial court did not abuse its discretion in finding defense counsel's statement that, "[t]his is just a guy who is present when another guy runs into his car," was an improper jury argument. The statement: (1) does not summarize the evidence, as there was no direct evidence regarding the relationship between Trejo and Appellant; (2) is not a reasonable deduction from the evidence presented, which showed that Trejo ran directly to Appellant's car and Appellant slowed down and was seen opening the door to let Trejo in the car; (3) was not an answer to the argument of opposing counsel; and (4) was not a plea for law enforcement. *See Berry*, 233 S.W.3d at 857.

Even assuming that the trial court erred, we perceive no harm because defense counsel was not deprived of the ability to fully develop and argue his defensive theory. The record reflects that defense counsel was allowed to, and did, vigorously argue that:

- the evidence would show Appellant had only gone to Costco to get boxes for an upcoming move;

- Costco kept boxes at the back of the store, presumably to explain why Appellant drove up from the back of the store;

- the parking lot was crowded and therefore it was reasonable for Appellant to slow down;

- it was impossible for Kuttner to see Appellant's hand on the handle and therefore impossible to tell whether Appellant was opening the door or holding it closed;

- the jury could not tell the exact nature of the relationship between Appellant and Trejo, stating in part, "[y]ou don't [know] anything about this;" and

- Appellant's "mere presence" did not make him a party to the offense.

Finally, the jury charge included an instruction on the law of the parties which stated that, "[m]ere presence alone will not make a person a party to an offense." Finding no abuse of

- 12 -

discretion, we overrule Issue Two.

## PUNISHMENT PHASE

In Appellant's third and final issue, he complains that evidence of his prior wrongful conduct was admitted although the State failed to provide notice to the defense. We review evidentiary rulings for an abuse of discretion. *McDonald v. State*, 179 S.W.3d 571, 576 (Tex.Crim.App. 2005). A trial court abuses its discretion when its decision clearly lies outside the zone of reasonable disagreement. *Id*.

During the punishment phase, evidence may be offered as to any matter the court deems relevant to sentencing, including but not limited to the prior criminal record of the defendant, his general reputation, his character, the circumstances of the offense for which he is being tried, and any other evidence of an extraneous crime or bad act that is shown beyond a reasonable doubt by evidence to have been committed by the defendant or for which he could be held criminally responsible. *See* TEX.CODE CRIM.PROC.ANN. art. 37.07, § 3(a)(1)(West 2006). Upon timely request, notice shall be given to the defense. TEX.R.EVID. 404(b); *Gonzalez v. State*, 337 S.W.3d 473, 485 (Tex.App.--Houston [1st Dist.] 2011, pet. ref'd), *quoting* Article 37.07 § 3(g); *Hernandez v. State*, 176 S.W.3d 821, 822 (Tex.Crim.App. 2005); *McDonald*, 179 S.W.3d at 577. The purpose of the notice requirement is to prevent surprise. *See Gonzalez*, 337 S.W.3d at 485.

Prior to trial, the State filed a supplemental notice of intent to introduce extraneous offenses, which included evidence that Appellant and David Trejo were members of the Barrio Azteca prison gang, and "ha[d] done numerous acts in furtherance of the purposes of that gang." But the notice did not indicate that the State intended to introduce evidence that Appellant and Trejo had also previously been members of the Los Fatherless street gang. Consequently,

Appellant contends that evidence of membership in the street gang was inadmissible. He also argues that the State acted in bad faith, that the prosecutors' conduct established a wanton and reckless disregard for Appellant's right to prepare his punishment case, that the defense was greatly surprised, and that counsel's ability to defend Appellant was hindered by the lack of notice.

Admitting evidence of extraneous offenses when the State has not provided proper notice is non-constitutional error. *Hernandez*, 176 S.W.3d at 824; *Gonzalez*, 337 S.W.3d at 485, *citing Ruiz v. State*, 293 S.W.3d 685, 695 (Tex.App.--San Antonio 2009, pet. ref'd); *Roethel v. State*, 80 S.W.3d 276, 281 (Tex.App.--Austin 2002, no pet.). We thus conduct a harm analysis under Texas Rule of Appellate Procedure 44.2(b). *McDonald*, 179 S.W.3d at 578; *Allen v. State*, 202 S.W.3d 364, 369 (Tex.App.--Fort Worth 2006, pet. ref'd)(finding error under Rule 404(b) and then conducting a harm analysis under Rule 44.2).

An appellate court may reverse a judgment of conviction or punishment based on non-constitutional error only if that error affected the defendant's substantial rights. TEX.R.APP.P. 44.2(b). A substantial right is affected when the error had a substantial and injurious effect or influence in determining the jury's verdict. *Hernandez*, 176 S.W.3d at 824, *citing King v. State*, 953 S.W.2d 266, 271 (Tex.Crim.App. 1997); *Allen*, 202 S.W.3d at 369 (explaining that error is harmless if the evidence is "substantively admissible" unless the error had a substantial influence on the jury's verdict and the defendant was surprised by the evidence). The conviction should be upheld if, after examining the whole record, we have a fair assurance that the error did not influence the jury or had but a slight effect. *McDonald*, 179 S.W.3d at 578. When substantively admissible Rule 404(b) evidence is improperly admitted because of the State's failure to comply with notice requirements, the error may have had a substantial effect or influence on the jury's

- 14 -

verdict, but it cannot be said that this effect or influence was 'injurious' if the defendant was not surprised. *Hernandez*, 176 S.W.3d at 825.

Even assuming that the State's failure to provide notice was error, Appellant has not shown unfair surprise and there is no evidence of bad faith. *See Gonzalez*, 337 S.W.3d at 485; *see also Hernandez*, 176 S.W.3d at 825; *Sharp v. State*, 210 S.W.3d at 839-40 (Tex.App.--Amarillo 2006, no pet.)(finding any error in admitting evidence of extraneous offense during punishment phase harmless despite failure to provide notice because appellant did not contend that witness's testimony caused him surprise, that omission from notice prevented him from preparing a defense, or that had he known, his defense would have differed); *see also McDonald*, 179 S.W.3d at 578 (holding that error in admitting evidence particular uncharged misconduct involving complainant's cousin, without notice, in a prosecution for indecency with a child did not prejudice the defendant and was harmless, where the defendant had opportunity to cross-examine complainant, the source of evidence at issue, and notice of particular extraneous misconduct at issue would not have affected defendant's trial strategy; defendant's strategy was to discredit complainant and her ability to remember specific details, and defendant received notice that state would offer evidence concerning his conduct with cousin and did not object to admissibility thereof).

At trial, Officer Andres Sanchez testified that Appellant was affiliated with the Los Fatherless street gang prior to becoming a member of the Barrios Aztecas prison gang. Defense counsel had the opportunity to cross-examine Officer Sanchez about the source of the information but declined to do so, choosing instead to question Sanchez about Appellant's affiliation with the Aztecas. The record reflects a defense strategy designed to show that although Appellant had been a high-ranking member of that gang, he had changed his ways and

was no longer a gang member. If Appellant was surprised by the testimony concerning the Los Fatherless affiliation, it was only as to the additional allegation that Appellant was a member of a street gang first. As stated in *McDonald*, "It is hard to imagine that his defense would have been altered in any meaningful way," and "had there been legitimate surprise that required a re-evaluation of trial strategy, the appellant could have requested a continuance." *McDonald*, 179 S.W.3d at 578. Here, defense counsel did not cross-examine Officer Sanchez as to the Los Fatherless affiliation, he did not request a continuance, and there is no evidence that notice as to the extraneous misconduct at issue would have affected the defensive strategy. *See id*.

Appellant has failed to show that any error in the admission of testimony regarding his affiliation with Los Fatherless street gang affected his substantial rights. *See Gonzalez*, 337 S.W.3d at 485; *Hernandez*, 176 S.W.3d at 825. We overrule Issue Three and affirm the trial court's judgment.


January 25, 2012      _____
                                 ANN CRAWFORD McCLURE, Chief Justice

Before McClure, C.J., Rivera, and Antcliff, JJ.

(Do Not Publish)