Jimmie GROSS, Appellant,

v.

The STATE of Texas, Appellee.

No. 14–10–00461–CR.

Court of Appeals of Texas,
Houston (14th Dist.).

Sept. 29, 2011.

Thomas Allan Martin, Houston, for appellant.

Michelle R. Townsend, Houston, for state.

Panel consists of Justices FROST, JAMISON, and McCALLY.

## OPINION

SHARON McCALLY, Justice.

Appellant Jimmie Gross appeals his conviction for murder under the law of parties. Because the evidence is insufficient to support appellant's conviction for murder under law of parties, we reverse the conviction and render judgment of acquittal.

## BACKGROUND[1]

On September 4, 2006, the complainant, Corkney Lee, was shot and killed by appellant's brother-in-law John Jones. Appellant, who was charged with murder of Lee, testified at Jones's murder trial. Jones was convicted of the murder of Lee. Subsequently, at appellant's trial for murder, the State read into the record the transcript of appellant's testimony from Jones's murder trial.

According to appellant's testimony, he and Jones were in a white Dodge Ram truck in the right hand lane at a stoplight. The female passenger of a vehicle in the left lane signaled for appellant to roll down his window. Lee, who was driving, asked appellant, "Do you know me?" Appellant responded, "No, I don't." Lee asked appellant, "Well, why are you watching me?" Appellant responded, "I'm not." This exchange continued until Lee asked appellant to pull into a gas station. Appellant complied.

Once at the gas station, appellant and Lee resumed their "verbal altercation" and exited their vehicles. Less than a minute later, Jones got out of the truck. Appellant testified that he did not know that Jones had gotten out of truck until Lee started running toward the store. At that moment, appellant looked back to see Jones raising a 12–gauge shotgun to his chest and pointing it in his and Lee's direction. Appellant yelled, "No, no," and ran back to the truck.

Appellant testified that he had been carrying the shotgun, which he claimed belonged to someone else, on the backseat of his truck for six to twelve months; the shotgun was unloaded but had ammunition stored in its "stock."

Appellant heard the shotgun, but claims he did not see Jones fire it or know that anyone had been shot. Appellant panicked, and he and Jones left the scene in appellant's truck. Appellant dropped off Jones, with the shotgun, at Jones's grandmother's house. Appellant drove back to the gas station where he saw eight or nine police cars and someone lying in the door of the store. When appellant found out that someone had been killed, he became "scared" and "panicked" and left gas station. Lee died of multiple gunshot pellet wounds to the back.

Appellant called a friend who was an officer with the Houston Police Department the next morning. On that friend's advice, appellant contacted an attorney who had previously represented him in a misdemeanor case. That attorney testified that he advised appellant not to "answer any questions without me being present."[2]

One of the HPD investigators testified that a break in the case came from a

---

1. The background recited here derives from appellant's testimony from Jones's trial that was read to the jury in this case. Though the jury might have disregarded some or all of this account, there is no other account of the crime. Other than appellant, no eye witnesses testified. One investigating officer interviewed witnesses and his complete testimony, which is consistent with appellant's account, is as follows: "We learned that [the crime] appeared to be involving some sort of altercation between two vehicles where the victim and his girlfriend were involved in an altercation with two other males in another car, a white Dodge Ram pickup. The alter-cation moved from the roadway into the convenience store area where the crime actually occurred where the individuals got out of the car and exchanged words again, specifically the driver of the white Dodge Ram and the victim in this case, Corkney Lee. When they did so, the passenger in the pickup truck got out of the car and fired one time striking and killing our victim."

2. The attorney was no longer representing appellant on the murder charge at the time of trial.

Crime Stoppers' tip, giving the police appellant's name. The police learned that appellant had recently purchased a white Dodge Ram pickup truck. When contacted by the police for information two days after the murder, appellant said that he was not involved. Subsequently, a confidential informant told a police detective he had heard appellant admit to his involvement in the case. On September 18, 2006, two weeks after the murder, the police arrested appellant. When questioned, appellant denied his involvement in the murder and did not mention Jones's name. Appellant was identified by witnesses in a "mock lineup" in the city jail and charged with murder. The jury found appellant guilty of murder under "law of parties." The trial court ordered a presentence investigation report and recessed the case for punishment. At the end of punishment hearing, the trial court sentenced appellant to ten years' confinement.

## SUFFICIENCY OF THE EVIDENCE

In his first issue, appellant contends that the evidence is legally and factually insufficient to sustain his conviction for murder under the law of parties. The Texas Court of Criminal Appeals held that the *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), legal sufficiency standard is the only standard to evaluate the sufficiency of the evidence in a criminal case. *Brooks v. State*, 323 S.W.3d 893, 895 (Tex.Crim.App.2010) (plurality opinion); *id.* at 926 (Cochran, J., concurring). Accordingly, we review the sufficiency of the evidence in this case under a rigorous and proper application of the *Jackson v. Virginia* sufficiency standard. *Brooks*, 323 S.W.3d at 906 (plurality opinion).

When reviewing the sufficiency of the evidence, we view all of the evidence in the light most favorable to the verdict and determine, based on that evidence and any reasonable inferences from it, whether any rational fact finder could have found the elements of the offense beyond a reasonable doubt. *Gear v. State*, 340 S.W.3d 743, 746 (Tex.Crim.App.2011); *see also Jackson*, 443 U.S. at 319, 99 S.Ct. 2781. The jury is the exclusive judge of the credibility of witnesses and the weight to be given to the evidence. *See Isassi v. State*, 330 S.W.3d 633, 638 (Tex.Crim.App.2010). Further, we defer to the jury's responsibility to fairly resolve or reconcile conflicts in the evidence. *Id.* We draw all reasonable inferences from the evidence in favor of the verdict. *Id.* This standard applies to both circumstantial and direct evidence. *Id.*

A person commits the offense of murder if he "intentionally or knowingly causes the death of an individual." TEX. PENAL CODE ANN. § 19.02(b)(1) (West 2011). A person is criminally responsible as a party to an offense if the offense is committed by his own conduct, by the conduct of another for which he is criminally responsible, or both. TEX. PENAL CODE ANN. § 7.01 (West 2011). A person is criminally responsible for an offense committed by the conduct of another if, acting with intent to promote or assist the commission of the offense, he or she solicits, encourages, directs, aids, or attempts to aid the other person to commit the offense. TEX. PENAL CODE ANN. § 7.02(a)(2) (West 2011).

Because appellant is not the principal actor, the State must prove conduct constituting an offense, plus an act committed by appellant with intent to promote or assist such conduct. *See Beier v. State*, 687 S.W.2d 2, 3 (Tex.Crim.App. 1985). In determining whether the accused participated as a party, the court may look to events occurring before, during, and after the commission of the offense, and may rely on actions of the defendant that show an understanding and

common design to do the prohibited act. *Ransom v. State*, 920 S.W.2d 288, 302 (Tex.Crim.App.1994) (op. on reh'g); *Cordova v. State*, 698 S.W.2d 107, 111 (Tex.Crim. App.1985). Because an agreement between the parties to act together in a common design can seldom be proven by words, the State often must rely on the actions of the parties showing an understanding and common design to commit the offense. *Brooks v. State*, 580 S.W.2d 825, 832 (Tex.Crim.App.1979). Circumstantial evidence may be used to prove the defendant is a party to an offense. *Cordova*, 698 S.W.2d at 111; *Wygal v. State*, 555 S.W.2d 465, 469 (Tex.Crim.App.1977). Any agreement to accomplish a common purpose must have been made before or contemporaneously with the criminal event. *Cordova*, 698 S.W.2d at 111; *Beier*, 687 S.W.2d at 3–4; *Urtado v. State*, 605 S.W.2d 907, 911 (Tex.Crim.App.1980).

The State argues evidence that appellant assisted Jones in fleeing from the scene by serving as the getaway driver and disposing of the murder weapon, and by refusing to come forward and denying his involvement is sufficient to support his conviction for murder under law of parties.[3] However, all of the acts by appellant upon which the State relies occurred *after* Jones shot Lee. "Acts done after the [offense] was completed [do] not make [the accused] a party to the offense." *Morri-*

*son v. State*, 608 S.W.2d 233, 235 (Tex. Crim.App.1980).

■ While appellant was present when Jones shot Lee and fled from the gas station immediately thereafter, such facts are not sufficient without more to sustain his conviction for murder under law of parties. *See Thompson v. State*, 697 S.W.2d 413, 417 (Tex.Crim.App.1985) ("[M]ere presence of a person at the scene of the crime, either before, during, or after the commission of the offense, or even flight from the scene, without more, is insufficient to sustain a conviction of one as a party to the offense."); *Valdez v. State*, 623 S.W.2d 317, 321 (Tex.Crim.App. 1979) (same). Only when combined with other incriminating evidence may such facts be sufficient to sustain a conviction. *Thompson*, 697 S.W.2d at 417; *Valdez*, 623 S.W.2d at 321. Here, there are no other facts making such evidence sufficient to support appellant's conviction.

■ The State argues that appellant's driving the getaway car and helping Jones dispose of the weapon are sufficient to support his conviction. While the undisputed evidence shows that appellant drove Jones away from the scene of the offense and that Jones took the shotgun with him when appellant dropped him off at his grandmother's house, this is not sufficient to support a murder conviction. Standing alone, proof that an accused assisted the

---

**3.** The dissent argues an alternate theory of sufficiency of the evidence, characterizing appellant and his brother-in-law as "a pair of hotheads with a gun" acting as cohorts "from start to finish." This rendition of facts is colorful but derives from nothing in the record beyond (1) appellant's presence at the scene, and (2) his verbal altercation with the complainant. If, as the dissent urges, appellant's presence and verbal altercation with the complainant amount to an appropriate inference that appellant provided a distraction to facilitate the murder, presence will always be sufficient to convict under the law of parties. The mere fact that a jury is willing to indulge an inference does not make it an appropriate inference; otherwise, appellate review of legal sufficiency would become unnecessary. Under the undisputed facts in this case appellant committed other, lesser, uncharged offenses. Appellate courts cannot stretch beyond an appropriate treatment of evidence to affirm a conviction where no reasonable jury could convict of the crime actually charged.

primary actor in making his getaway is insufficient, even though the accused's conduct may constitute the independent offense of hindering apprehension or prosecution. *Scott v. State*, 946 S.W.2d 166, 168 (Tex.App.-Austin 1997, pet. ref'd); *see also Urtado*, 605 S.W.2d at 912 (explaining that former Penal Code provision that an accessory was a party to a crime has been eliminated and is now the separate and distinct crime of hindering apprehension or prosecution).

The State relies on a Court of Criminal Appeals opinion and an opinion from this court in support of its getaway-driver theory. *See Thompson*, 697 S.W.2d at 417; *Webber v. State*, 757 S.W.2d 51 (Tex.App.-Houston [14th Dist.] 1988, pet. ref'd). However, the State's reliance on *Thompson* and *Webber* are misplaced as the evidence in both cases included incriminating facts that went to the respective defendants' conduct before the offenses as well as after the offenses.

In *Thompson*, the defendant was found guilty of aggravated robbery as a party to the offense that was committed by Jerry Wayne Fears. *See* 697 S.W.2d at 414. The evidence also showed that, prior to the robbery, the defendant had parked the car she was driving that day in front of the complainant's place of business for an unreasonable length of time, that she was near the complainant's place of business after the robbery, and that, not too long after the robbery, the defendant, while accompanied by Fears, was arrested for speeding. *Id.* at 417. There was conflicting testimony concerning the finding of the pistol used by Fears in the robbery, and the jury was free to believe that the defendant led the police to that pistol. *Id.* As to evidence that the defendant had $200 on her when she was arrested, the jury was also free to believe or disbelieve that the money came from the robbery. *Id.* Holding that those circumstances were sufficient to warrant any rational trier-of-fact's finding the defendant guilty as a party to the offense committed by Fears, the court explained that it had incriminating facts that went to the defendant's conduct both before and after the commission of the offense. *Id.*

In *Webber*, the appellant was found guilty as a party to offense of aggravated robbery. 757 S.W.2d at 52. A witness identified the defendant as driving the car that dropped off the robber near a service station before the robbery, parking the car in a dark spot on the street, and inching the car forward without lights, and the witness saw the robber jump into the car after the robbery. *Id.* at 55.

Similarly, *Hoang v. State*[4] and *Hernandez v. State*,[5] both relied upon by the dissent, are distinguishable. In *Hoang*, the evidence showed that the defendant, who was driving and intoxicated, fired his Glock firearm into the air as his car entered the Southwest Freeway. 263 S.W.3d at 23. Anthony, a passenger in the defendant's car who was also intoxicated, became angry at the slow driver in front of the defendant's car and asked the defendant for the gun and to "pull up." *Id.* The defendant then handed Anthony the gun and drove his car parallel to the slow driver's car, while Anthony unloaded nine rounds into the complainant's car, killing the complainant. *Id.* The court held that this evidence established that the defendant assisted Anthony by giving him the loaded firearm and driving his car parallel to, close to, and about the same speed as the complainant's car, enabling Anthony to

---

4. *See* 263 S.W.3d 18 (Tex.App.-Houston [1st Dist.] 2006, pet. ref'd).

5. *See* 171 S.W.3d 347 (Tex.App.-Houston [14th Dist.] 2005, pet. ref'd).

be in a position to shoot the complainant accurately and repeatedly. *Id.*

In *Hernandez,* the defendant was convicted of capital murder as a party. 171 S.W.3d at 351. By the defendant's own admission, he and Pena planned to rob the complainant by confronting the complainant, subduing him, and taking his guns. *Id.* at 355. The defendant testified that part of the plan was to have Pena and the complainant smoke crack cocaine before wrestling the complainant down and tying him up. *Id.* On those facts, the jury was entitled to find that the defendant should have anticipated that one of the many parts of his plan—whether it be smoking crack cocaine, subduing the complainant, or stealing the complainant's guns—could result in the complainant being shot with one of his own guns. *Id.*

The dissent also relies on *Guevara v. State* for the proposition that appellant's failure to notify the police of his involvement supports an inference that he was attempting to mislead investigators about his role. *See* 297 S.W.3d 350 (Tex.App.-San Antonio 2009, pet ref'd). However, in that case, there was ample evidence that the defendant and the primary actor, Minnie Salinas, planned the murder of the defendant's wife. The defendant was having an affair with Salinas, who issued an ultimatum to the defendant shortly before victim was killed. *Id.* at 354. The jury could infer that the defendant lied to the police about his relationship with Salinas to distance himself from her and mislead police about his role in planning the murder. *Id.* at 359. Shortly before the murder, the defendant took Salinas to a shooting range where they both fired a nine millimeter gun—the same type of gun used to kill the victim. *Id.* Also, the defendant had researched on the internet how to make a silencer; no one at the victim's apartment complex heard a gunshot. *Id.*

at 360. An alibi witness thought it was strange that the defendant asked him to play golf, on the morning of the murder, on a regulation golf course when the witness was an amateur golfer. *Id.* Although three bullets were fired at the crime scene, only one casing was found there—two shell casings matching one casing that was left behind were found in the defendant's vehicle. *Id.* at 359–60. Thus, the court held that that jury could have inferred that the defendant and Salinas were acting together to murder the victim. *Id.* at 359.

Simply because actions or events occurring after the event are relevant to show pre-existing intent does not mean those actions or events may form the basis for solicitation, encouragement, direction, aid, or an attempt to aid. *See Morrison,* 608 S.W.2d at 235 ("Acts done after the [offense] was completed [do] not make [the accused] a party to the offense."). Post-offense conduct alone cannot form the basis for aiding or encouraging the completed offense. *See Brooks,* 580 S.W.2d at 831 ("[T]he evidence must show that *at the time of the commission of the offense* the parties were acting together, each doing some part of the execution of the common purpose.") (emphasis supplied). The "acting together" need not rise to the level of agreement. *Bragg v. State,* 73 Tex.Crim. 340, 166 S.W. 162, 163 (1914). However, the parties must be acting together to accomplish their common purpose. *Wygal,* 555 S.W.2d at 469; *Christensen v. State,* 240 S.W.3d 25, 31 (Tex.App.-Houston [1st Dist.] 2007, pet ref'd) (op. on reh'g). Thus, for a defendant to be considered a party to an offense, he must commit some culpable act before or during the commission of the offense. *Morrison,* 608 S.W.2d at 235; *see also Cordova,* 698 S.W.2d at 111 (explaining that any agreement to accomplish a common purpose

must have been made before or contemporaneously with the criminal event).

■ Even indulging the inferences that Jones (1) was involved in the altercation while the parties were still in their vehicles, and (2) knew that appellant kept a shotgun in his truck, as the jury was entitled to do, these inferences do not support a prior or contemporaneous plan to shoot Lee once the altercation moved to the gas station. Any conclusion to the contrary is based on mere speculation. *See Hooper v. State,* 214 S.W.3d 9, 16 (Tex.Crim.App. 2007) ("Speculation is mere theorizing or guessing about the possible meaning of facts and evidence presented. A conclusion reached by speculation may not be completely unreasonable, but it is not sufficiently based on facts or evidence to support a finding beyond a reasonable doubt.... [Juries] are not permitted to draw conclusions based on speculation."). Moreover, evidence that a person simply handed the deadly weapon to the attacker does not in and of itself show intent to commit murder; intent can only be inferred from handing the attacker the deadly weapon if other circumstances warrant. *Hoang,* 263 S.W.3d at 22; *Navarro v. State,* 776 S.W.2d 710, 714 (Tex.App.-Corpus Christi 1989, pet. ref'd). Here, no other circumstances exist that would warrant an inference of intent.

There is no evidence—direct or circumstantial—of Jones and appellant's "acting together" pre-murder. There is no evidence that appellant assisted Jones before Jones loaded the shotgun, got out of truck, aimed the shotgun at Lee, and pulled the trigger. Viewing the evidence in the light most favorable to the jury's verdict, no rational trier of fact could have found appellant guilty as a party to Lee's murder beyond a reasonable doubt. Thus, the evidence is insufficient to support appellant's conviction. We sustain appellant's first issue.

Having sustained appellant's first issue, we reverse and render a judgment of acquittal.[6]

FROST, J., dissenting.

KEM THOMPSON FROST, Justice, dissenting.

Corkney Lee is dead because of a pair of hotheads with a gun. Appellant and his cohort acted together from start to finish. Together, they got into a truck where a shotgun and ammunition lay within easy reach. Together, the twosome traveled the roadway, spewing heated words at the occupants of another vehicle until the ugly exchange escalated to a showdown. Together, the impetuous pair, gun in tow, went to face their roadway nemesis in a nearby parking lot, where the pull of a trigger would forever silence him. And, together, the cohorts sped away from the scene and fled to a relative's house, where one took the gun and the other the truck, and both worked to conceal the terrible deed.

Together, the twosome transformed a random roadway encounter into to a deadly confrontation. Appellant was the driver, not the shooter, but under Texas law the jury found him guilty just the same because he acted with the intent to promote or assist the shooter in the commission of the murder by soliciting, encouraging, directing, aiding, or attempting to aid him in the commission of that offense. The twelve jurors who evaluated the evidence were convinced of appellant's guilt

---

6. In light of our disposition, we need not address appellant's remaining issue claiming ineffective assistance of counsel.

beyond a reasonable doubt. But, today the majority finds the evidence insufficient to support the murder conviction and renders a judgment of acquittal.

How could the majority look at the same evidence and come to such a different conclusion? The explanation is simple: the jury evaluated all permissible proof—evidence and reasonable inferences from the evidence—but the majority focuses only on isolated pieces of evidence without considering the context or the full picture. In the process, the majority insists on higher proof than the law demands. Ultimately, the majority concludes, "There is no evidence—direct or circumstantial—of [the shooter] and appellant's 'acting together' pre-murder." [1] An evaluation of all the proof under applicable law leads to the opposite conclusion. The evidence is sufficient to support the conviction under the law of the parties.

FACTUAL AND PROCEDURAL BACKGROUND

Appellant was traveling home from a night club with his brother-in-law of eight years, John Jones, who was his frequent companion. According to evidence at trial,[2] they were in a white Dodge Ram truck with appellant at the wheel and Jones in the passenger seat. Appellant kept a shotgun behind the headrests of the backseat of the truck with ammunition nearby.

While appellant and Jones were stopped at a traffic signal, the complainant Corkney Lee pulled his vehicle up beside them. The drivers began to engage in heated talk. The encounter soon escalated to the point that both drivers pulled into the parking lot of a nearby service station and convenience store. The stage was set for a face-off. Appellant exited his truck, leaving Jones with the shotgun. Lee also exited his vehicle. Appellant and Lee continued the escalating verbal exchange. Appellant claimed to have been two to three steps away from the Lee's vehicle—close enough to touch it. For about a minute, appellant stood face to face with Lee, exchanging heated words. Then a shotgun blast rang out.

Appellant claimed that before the shooting, he saw Lee turn to run away and then turned to see Jones aiming the shotgun in Lee's direction. Appellant testified that he did not see Jones fire the weapon but that he heard the sound of the shotgun blast. Appellant claimed to have said, "No, no," and turned to run to his truck. Even though appellant was standing right there and even though Lee suffered multiple wounds from the blast, appellant claimed he did not know that anyone had been hit.

After the shooting, appellant and Jones immediately fled the scene in the truck, with appellant at the wheel and Jones in the passenger seat. Appellant drove Jones to a relative's home. Jones got out of the truck and took the shotgun with him.

Five minutes later, appellant returned to the scene of the shooting. He claimed that was when he learned that Lee had been shot and killed. Eight to nine law enforcement vehicles had arrived and one officer on the scene described seeing the dead body of 26–year–old Lee laying in the open doorway of the convenience store. Another officer testified that by the time he arrived, a large crowd had gathered at the scene. This officer interviewed several

1. See ante at p. 244.

2. Jones was convicted of Lee's murder. Jones also was convicted of murder of another person completely unrelated to the charged offense. Appellant testified at both of Jones's trials. Appellant's testimony at Jones's trials was read into evidence at trial in the case under review.

witnesses as part of the investigation. Appellant, watching from afar, left the scene without speaking with any of the law enforcement officers.

The autopsy report reflects that Lee sustained multiple shotgun pellet wounds primarily in his back with a few on the back of his head and on one of his arms. Postmortem x-rays of Lee's head revealed six shotgun pellets in the scalp tissue. The bulk of the shotgun blast entered Lee's back; wounds are spread over an eleven-inch zone. The medical examiner determined that the cause of Lee's death was the multiple wounds to the back.

Investigating officers testified that they identified appellant as a suspect following a tip. According to the investigators, when appellant was questioned by authorities, he repeatedly denied any involvement in the offense. Ultimately, appellant was charged with Lee's murder and the case proceeded to trial.

The trial court included instructions in the jury charge indicating that appellant could be convicted as a party to the charged offense. The jury found appellant guilty as charged. The trial court ordered a pre-sentence investigation report and recessed the case. Following a punishment hearing, the trial court sentenced appellant to ten years' confinement.

## SUFFICIENCY OF THE EVIDENCE

In appellant's first issue, he asserts the evidence is legally and factually insufficient to support his conviction under the law of parties.

In evaluating a party's challenge to the sufficiency of the evidence, this court must view the evidence in the light most favorable to the verdict. *Wesbrook v. State,* 29 S.W.3d 103, 111 (Tex.Crim.App.2000). The issue on appeal is not whether we, as a court, believe the State's evidence or believe that appellant's evidence outweighs the State's evidence. *Wicker v. State,* 667 S.W.2d 137, 143 (Tex.Crim.App.1984). The verdict may not be overturned unless it is irrational or unsupported by proof beyond a reasonable doubt. *Matson v. State,* 819 S.W.2d 839, 846 (Tex.Crim.App. 1991). The trier of fact "is the sole judge of the credibility of the witnesses and of the strength of the evidence." *Fuentes v. State,* 991 S.W.2d 267, 271 (Tex.Crim.App. 1999). The trier of fact may choose to believe or disbelieve any portion of the witnesses' testimony. *Sharp v. State,* 707 S.W.2d 611, 614 (Tex.Crim.App.1986). When faced with conflicting evidence, we presume the trier of fact resolved conflicts in favor of the prevailing party. *Turro v. State,* 867 S.W.2d 43, 47 (Tex.Crim.App. 1993). Therefore, if any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt, we must affirm. *McDuff v. State,* 939 S.W.2d 607, 614 (Tex.Crim.App.1997).

A majority of the judges of the Texas Court of Criminal Appeals has determined that "the *Jackson v. Virginia* legal-sufficiency standard is the only standard that a reviewing court should apply in determining whether the evidence is sufficient to support each element of a criminal offense that the State is required to prove beyond a reasonable doubt." *Brooks v. State,* 323 S.W.3d 893, 895 (Tex.Crim.App.2010) (plurality op.); 323 S.W.3d 893, 912–14 (Cochran, J., concurring.) (same conclusion as plurality). The *Brooks* plurality opinion indicates that appellate courts should apply the *Jackson v. Virginia* standard in a "rigorous and proper" manner. *See id.* at 906, 912 (plurality op.). Presumably, by "rigorous" the plurality meant "scrupulously accurate: EXACT, PRECISE." WEBSTER'S THIRD NEW INT'L DICTIONARY 1957 (1993 ed.). Though the five justices in *Brooks* emphasized the importance of a scrupulous, accurate, and proper applica-

tion of the *Jackson v. Virginia* standard, they did not purport to change the *Jackson v. Virginia* standard or the manner in which courts should apply it. *See Brooks,* 323 S.W.3d at 894–912; *id.* 323 S.W.3d at 912–26. Thus, the *Brooks* decision did not change the law regarding the *Jackson v. Virginia* standard and its application. In post-*Brooks* opinions the Court of Criminal Appeals has cited and applied prior precedent regarding the *Jackson v. Virginia* standard; the high court has not mentioned a rigorous application but has echoed the traditional language when describing the standard. *See York v. State,* 342 S.W.3d 528, 544 & n. 93 (Tex.Crim.App. 2011); *Sorrells v. State,* 343 S.W.3d 152, 155 (Tex.Crim.App.2011); *Gear v. State,* 340 S.W.3d 743, 746–47 (Tex.Crim.App. 2011); *Blackman v. State,* 350 S.W.3d 588, 595 (Tex.Crim.App.2011). Therefore, this court must review the evidence under the *Jackson v. Virginia* standard as articulated above.

A person commits the offense of murder if that person intentionally or knowingly causes the death of another or if that person intends to cause serious bodily injury and commits an act clearly dangerous to human life that causes the death of another. *See* TEX. PENAL CODE ANN. § 19.02(b) (West 2011). There is no dispute that Jones was the principal actor in the commission of Lee's murder.

Under the law of parties, the State may enlarge an accused's criminal responsibility to include acts in which he may not be the principal actor. *See* TEX. PENAL CODE ANN. § 7.01(a) (West 2011); *Goff v. State,* 931 S.W.2d 537, 544 (Tex.Crim.App.1996). When, as in this case, an accused is not the principal actor, the State must prove conduct constituting an offense plus an act committed by the defendant with intent to promote or assist such conduct. *Beier v. State,* 687 S.W.2d 2, 3 (Tex.Crim.App.

1985). Under the law of parties, a person is criminally responsible for an offense committed by another if, acting with the intent to promote or assist the commission of the offense, that person solicits, encourages, directs, aids, or attempts to aid the other person to commit the offense. TEX. PENAL CODE ANN. § 7.02(a)(2) (West 2011).

To prove that an accused acted as a party to an offense, the State was required to show that appellant acted with the intent to promote or assist Jones in the commission of Lee's murder by soliciting, encouraging, directing, aiding, or attempting to aid Jones in commission of that offense. *See Martin v. State,* 753 S.W.2d 384, 386 (Tex.Crim.App.1988); TEX. PENAL CODE ANN. § 7.02(a)(2) (West 2011). In determining whether appellant participated as a party, this court may look to events occurring before, during, and after the commission of the offense to show an understanding and common design to commit a prohibited act. *See Ransom v. State,* 920 S.W.2d 288, 302 (Tex.Crim.App. 1996) (op. on reh'g). Evidence is sufficient to sustain a conviction under the law of parties if it shows that the accused was physically present at the commission of the offense and encouraged commission of the offense by either words or other agreement. *See Ransom,* 920 S.W.2d at 302; *Tarpley v. State,* 565 S.W.2d 525, 529 (Tex. Crim.App.1978); *Hoang,* 263 S.W.3d at 22. Because an agreement between parties seldom can be proven through words, the State may rely upon the actions of the parties, shown by direct or circumstantial evidence, to establish an understanding or common design to commit an offense. *See Ransom,* 920 S.W.2d at 302; *Hoang v. State,* 263 S.W.3d 18, 22 (Tex.App.-Houston [1st Dist.] 2006, pet. ref'd).

Mere presence at the scene of the offense does not establish guilt as a party to the offense. *Porter v. State,* 634 S.W.2d

846, 849 (Tex.Crim.App.1982). But presence at the scene is a circumstance tending to prove guilt, which, when combined with other facts, may suffice to show that the accused was a participant. *See Beardsley v. State*, 738 S.W.2d 681, 685 (Tex.Crim. App.1987); *Valdez v. State*, 623 S.W.2d 317, 321 (Tex.Crim.App.1979). In this case appellant not only was present when Lee was shot but appellant was engaging him while Jones readied the shotgun and fired.

Moreover, appellant took the lead in the heated exchange that culminated in the parking lot showdown. Appellant transported both the shooter and the shotgun to and from the murder scene. Appellant then deposited the shooter and the shotgun at a relative's home, and appellant did not reveal the location of either to law enforcement at the scene or in the various interviews that followed. Throughout the investigation appellant concealed his involvement.

Investigators testified that witnesses reported seeing a white Dodge Ram truck at the scene. According to the trial testimony of one investigating officer who spoke with three unnamed witnesses, investigators learned that an altercation between the occupants of two vehicles had broken out. The conflict involved, on one side, Lee and his girlfriend in one vehicle, and on the other side, appellant and Jones in appellant's truck. Appellant does not dispute that he drove the truck, that he participated in the heated roadway exchange, and that he was present at the scene when Lee was shot. Nor does appellant dispute that the encounter with Lee escalated after the two drivers stopped their vehicles at the service station. The record reflects that the firearm Jones used was one that appellant kept behind the headrests in the backseat of his truck "for protection." The gun, which had been in the truck for at least six months, was not concealed but on top of the seat behind the window. According to appellant, he presumed that Jones knew about the firearm and had seen it in the back of the truck given that the two brothers-in-law spent time together.

Given the evidence that the altercation involved the occupants of both vehicles, the jury reasonably could have inferred that appellant and Jones were acting together as they both participated in the roadway encounter and as their heated exchange with Lee intensified to the point that the drivers of the vehicles pulled into the service station for a confrontation. The jury was entitled to believe that appellant worked with and assisted Jones by engaging Lee in the verbal altercation, by driving Jones and the firearm to the service station with the intention of facing off with Lee, and by exiting the truck and engaging Lee while Jones remained in the truck readying the shotgun.

The evidence shows the two brothers-in-law were acting in tandem with the common purpose of confronting the roadway stranger whose heated words they did not welcome. There is no suggestion from the record evidence that either Jones or appellant sought to avoid the conflict; the evidence shows that appellant, instead of driving away from a confrontation, drove straight toward one. All of the ingredients for a deadly encounter were present: a heated exchange, a refusal to walk away, escalating tensions, a shotgun within easy reach, and a driver (appellant) willing to bring them all together for a showdown.

The jury reasonably could have inferred from the evidence that (1) appellant exited the truck to draw Lee's attention while providing an accessible firearm and ammunition to Jones, (2) appellant, by getting out of the truck, walking within touching distance of Lee's vehicle and drawing

Lee's attention, enabled Jones to be in a position to shoot Lee, and (3) appellant effected a speedy getaway, transporting Jones and the gun to a location where the two cohorts could separate and get rid of the murder weapon. *See Hoang,* 263 S.W.3d at 23–24 (concluding that evidence was sufficient to support murder conviction as a party when the accused provided a loaded weapon to the shooter and maneuvered his vehicle in a way to facilitate the shooter's ability to hit the complainant's vehicle).

According to the record, after appellant heard the gun fire, he immediately returned to his truck and fled with Jones. A defendant can be convicted as a party if the evidence establishes that he participated in the commission of the offense by driving the getaway vehicle. *Thompson v. State,* 697 S.W.2d 413, 417 (Tex.Crim.App. 1985); *see also Clayton v. State,* 235 S.W.3d 772, 780 (Tex.Crim.App.2007) (recognizing that factfinder may draw inference of guilt from the circumstance of flight, serving as additional piece of incriminating circumstantial evidence supporting conviction). Appellant claims to be an "unknowing and unwitting" getaway driver; he claimed at trial that he did not know Lee had been fatally shot. Standing alone, proof that an accused assisted the principal actor in making a getaway is insufficient to sustain a conviction under the law of parties, even though the accused's conduct may constitute an independent offense of hindering apprehension or prosecution. *Valdez,* 623 S.W.2d at 321. But the evidence in the record supports a far greater role than merely transporting the shooter and murder weapon from the scene. The evidence shows appellant's knowing and active participation before, during, and after the deadly confrontation.

According to appellant's testimony, as read into evidence, he already had engaged Lee in a verbal altercation that led both drivers to pull into the service station to continue the heated exchange. Appellant knew he was well-equipped for a deadly confrontation. Appellant carried a firearm and ammunition in clear view in his truck and presumed that Jones, his frequent companion, was aware of the firearm. Appellant knew that Jones was aiming the shotgun in Lee's direction in the minutes following the heated verbal altercation. According to appellant's testimony, the nature of the particular twelve-gauge, pump-action shotgun required Jones to take time to load the ammunition and pump the firearm before actually firing it. Thus, the loading, pumping, pointing, aiming, and shooting process was not instantaneous. Although appellant claimed that he did not see Jones loading the gun or firing the actual shot from the gun, appellant acknowledged that he heard the sound of the gun fire and was in the presence of both the shooter and the victim when the shot was fired.

The jury was free to disbelieve appellant's claim that he did not know Lee had been shot or fatally shot. *See Sharp,* 707 S.W.2d at 614 (providing that a jury, in assessing witnesses' credibility and demeanor, may reject an accused's exculpatory explanation); *Guevara v. State,* 297 S.W.3d 350, 358 (Tex.App.-San Antonio 2009, pet. ref'd). Likewise, the jury was free to disbelieve appellant's statements that he was an "unknowing and unwitting" getaway driver and to conclude that appellant lied about not seeing or knowing of the murder out of a consciousness of guilt. Indeed, the jury reasonably could have concluded that appellant was like one who douses combustibles with gasoline, strikes a match, and then cries that he is the unknowing and unwitting victim of the fire.

The jury could infer from the evidence that following the heated roadway encoun-

ter, appellant pursued Lee's vehicle to the service station with the intent of confronting him, that appellant brought an accessible firearm and ammunition to the scene of the altercation, that appellant and Jones communicated about the unfolding events en route to the showdown, that appellant continued to engage Lee in the heated exchange while Jones loaded, pumped, aimed, and fired the gun, and that appellant then drove his brother-in-law and the murder weapon away from the scene. *See Hoang*, 263 S.W.3d at 23–24; *Hernandez*, 171 S.W.3d at 355 (providing that the jury could have found that an accused should have anticipated the complainant being shot based on any one part of a plan to confront the complainant); *Banda v. State*, 758 S.W.2d 902, 904 (Tex.App.-Corpus Christi 1988, no writ) (noting that speedy getaway suggests conviction as a party, even though other evidence in case did not support conviction). Notably, appellant not only transported Jones from the murder scene but also secreted him to their relative's house. Appellant also allowed Jones to take appellant's shotgun with him as he exited the vehicle at the relative's house following the shooting. A jury reasonably could have inferred that appellant assisted Jones in fleeing the scene and in helping him dispose of the firearm that was used to kill Lee. *See Hoang*, 263 S.W.3d at 23 (concluding evidence was sufficient to support conviction as a party when an accused drove the alleged shooter from the scene and tried to cover up the crime); *see also Guevara*, 297 S.W.3d at 359 (involving a murder weapon that was never recovered). Likewise, the jury reasonably could have disbelieved appellant's account that he was unaware that anyone had been shot. Even under appellant's account, when he returned to the scene and learned of Lee's death, appellant did not notify authorities of his knowledge of or association with the offense. In the many times appellant spoke with investigators following the shooting, he repeatedly denied any involvement. Failing to notify authorities of a crime is not enough to sustain a conviction. *See Clayton*, 235 S.W.3d at 780. But, based on appellant's repeated failure to notify authorities of his involvement, a rational jury reasonably could have believed that appellant was not being truthful with authorities and concealed his knowledge about the offense as a way to mislead investigators about his role in the offense and to avoid apprehension and cover up his guilt. *See Guevara*, 297 S.W.3d at 359 (concluding evidence was sufficient to support conviction of murder as a party, in part, by the defendant's continued denial even after confronted by authorities); *see also Clayton*, 235 S.W.3d at 780–81 (considering, as part of sufficiency review, that defendant's failure to inform authorities of offense was related to incongruity in defendant's account of events and the fact that he fled the scene). As noted, the record supports a firm conclusion that appellant knowingly served as a "getaway driver" who helped the principal actor (Jones) flee the scene and dispose of the murder weapon, thus, supporting appellant's conviction as a party to the murder. *See Thompson*, 697 S.W.2d at 417 (holding evidence was sufficient to support conviction based in part of the accused's role in driving the getaway vehicle); *Guevara*, 297 S.W.3d at 359 (concluding evidence was sufficient even though weapon was never recovered and the accused continued to deny involvement even after being confronted by authorities).

The Texas Legislature has determined that one who acts with the intent to promote or assist the commission of the offense and encourages, directs, aids, or attempts to aid another to commit the offense, cannot escape the consequences

of his actions as a party. *See* TEX. PE-
NAL CODE ANN. § 7.02(a)(2) (West 2011).
In viewing the evidence in the light most
favorable to the jury's verdict, a rational
trier of fact could have found appellant
guilty as a party to Lee's murder be-
yond a reasonable doubt. Therefore, the
evidence is sufficient to support appel-
lant's conviction.

### CONCLUSION

Sufficient evidence supports the jury's
determination that appellant is just as
guilty of murdering Lee as if appellant had
pulled the trigger himself. The jury held
appellant accountable for his role in the
murder; the majority does not. Instead
of reversing appellant's conviction, this
court should overrule appellant's sufficien-
cy challenge and address appellant's other
issues. Because it does not, I respectfully
dissent.