

**NUMBER 13-14-00312-CR**

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

ARTURO SANCHEZ ALMAGUER,                                              Appellant,

v.

THE STATE OF TEXAS,                                              Appellee.

### On appeal from the 206th District Court of Hidalgo County, Texas.

# MEMORANDUM OPINION

### Before Justices Rodriguez, Garza and Longoria
### Memorandum Opinion by Justice Longoria

Appellant, Arturo Sanchez Almaguer, was convicted by a jury on two counts of capital murder and sentenced to life imprisonment. *See* TEX. PENAL CODE ANN. § 19.03(a)(2) (West, Westlaw through Chapter 46 2015 R.S.). Appellant challenges his conviction by two consolidated issues. We affirm.

## I.    BACKGROUND

On November 12, 1988, Officer Roberto Moreno of the Weslaco Police Department responded to a report of shots fired at the Magic Valley Trailer Park in Weslaco, Texas.  Upon his arrival, residents of the trailer park directed him to the Squires home.  Inside the trailer, he discovered a male and a female body on the floor.  Officer Moreno identified the bodies as those of Evan and Wilda Squires.  Both appeared to have been shot and neither was responsive.  Both died as a result of the gunshot wounds.  Officer Moreno and other investigators who were called to the scene observed a pile of human feces on the carpet in one of the rooms, as well as a pair of jean shorts covered in feces.  They also observed a box of silverware lying on the floor, a machete on a chair, and a radio that appeared to have been wrapped up.  Officer Patsy Pemelton observed a trail of clothes leading from the side door of the trailer down to a drain ditch some distance away.  At the end of the trail, she found a bag containing clothes as well as a torn shirt that was also covered in feces.  Officer Pemelton took these items into evidence.

In 2005, the Texas Department of Public Safety ("DPS") DNA lab in McAllen, Texas, obtained partial DNA profiles from the fecal stains on both the torn shirt found at the end of the trail and the jean shorts found at the Squires' home.  In 2012, the DPS DNA lab received a known DNA sample from appellant.  The lab compared the DNA profiles from the shirt and jean shorts to appellant's DNA profile.  DNA analyst Alejandro Madrigal testified that appellant could not be eliminated as a potential contributor to the DNA profiles found on the clothing.  The State indicted appellant on three counts of capital murder.  *See id.*  A jury convicted appellant on all three counts of capital murder.  The

2

State elected to dismiss Count 1 after receiving the verdict, and appellant was automatically sentenced to life imprisonment.[1]

## II. LEGALLY INSUFFICIENT EVIDENCE

By his first issue, appellant asserts that the evidence is legally insufficient to support a finding beyond a reasonable doubt that he intentionally caused the deaths of Evan and Wilda Squires.

### A. Standard of Review and the Applicable Law

The standard for reviewing the existence of legally sufficient evidence is whether any rational trier of fact could have found all the essential elements of the charged offense proven beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). We view the evidence in the light most favorable to the verdict. *Id.* The jury serves as the exclusive judge of the facts, the credibility of the witnesses, and the weight given to the witnesses' testimony. *Williams v. State*, 226 S.W.3d 611, 615 (Tex. App.—Houston [1st Dist.] 2007, no pet.). The jury may believe all, some, or none of the testimony presented. *Id.* In our review, we must uphold the jury's verdict unless it is irrational or if it is not supported by more than a mere modicum of evidence. *Gomez v. State*, 234 S.W.3d 696, 702 (Tex. App.—Amarillo 2007, no pet.). Every single fact presented does not have to point directly and independently to the defendant's guilt; it is sufficient if the conclusion is reasonable by the cumulative effect of all the incriminating circumstances. *Alexander v. State*, 740 S.W.2d 749, 758 (Tex. Crim. App. 1987). The standard of review is the same for both direct and circumstantial evidence. *Frank v. State*, 265 S.W.3d 519, 521 (Tex. App.—Houston [1st Dist.] 2008, no pet.).

---

[1] Appellant was also indicted for murdering more than one person during the same criminal transaction. *See* TEX. PENAL CODE ANN. § 19.03(a)(7)(A) (West, Westlaw through Chapter 46 2015 R.S.).

We measure the legal sufficiency of the evidence against the elements of the offense as defined by a hypothetically correct jury charge. *Curry v. State*, 975 S.W.2d 629 (Tex. Crim. App. 1998). A hypothetically correct jury charge is one that accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or restrain the State's theory of criminal responsibility, and adequately describes the particular offense for which the defendant was tried. *Triplett v. State*, 292 S.W.3d 205, 210 (Tex. App.—Amarillo 2009, pet. ref'd).

Here, the State was required to prove that appellant murdered the Squires in the course of committing or attempting to commit burglary. *See* TEX. PENAL CODE ANN. § 19.03(a)(2). A person commits murder if he "intentionally or knowingly causes the death of an individual." *See id.* A person commits burglary if: (1) without consent of the owner, (2) the person enters a habitation (3) with intent to commit a felony, theft, or assault. *See id.* § 30.02 (West, Westlaw through Chapter 46 2015 R.S.); *Gardner v. State*, 306 S.W.3d 274, 287 (Tex. Crim. App. 2009) (stating that appellant committed burglary when he entered the victim's home without her effective consent and committed murder).

**B. Discussion**

Appellant argues that no evidence, circumstantial or otherwise, was presented to show that he caused the death of either Mr. or Mrs. Squires. Although DNA evidence was presented to show that appellant was at the crime scene, there was no evidence to show that he was present at the time of the murders. Even though appellant does not dispute that circumstantial evidence is sufficient to establish guilt, he contends that convictions cannot be upheld if based solely on speculation. Appellant argues that the only link to the offense was his DNA at the scene of the crime; that DNA alone is not

4

sufficient evidence to show he intentionally caused the death of the Squires; and that the DNA evidence is also insufficient to show that he was in the course of committing or attempting to commit a burglary.

### 1. Burglary

Here, the State was required to prove that appellant had entered the Squires' home without their consent to commit a felony. *See* TEX. PENAL CODE ANN. § 30.02. The jury heard evidence that the Squires appeared to have been awakened in the middle of the night and at a time they were usually already in bed. The evidence showed that appellant's DNA was discovered at the Squires' home in the form of feces on the carpet and on more than one article of clothing. An investigator testified that the feces appeared to be fresh because the odor strongly permeated the scene when he arrived a few minutes after the shots were fired. Furthermore, silverware and other valuables were found in what appeared to be odd places around the home and outside. A radio appeared to be wrapped up as if in preparation of being moved elsewhere and a machete had been placed on a chair. Appellant's DNA placed him inside the Squires' home and at the end of the trail of clothing outside the home. Therefore, the evidence could have permitted the jury to make a logical inference as to appellant's unlawful presence in the Squires' home that night as well as his attempt to commit a burglary. *See id.; Matamoros v. State*, 901 S.W.2d 470, 474 (Tex. Crim. App. 1995) (holding that the defendant committed burglary because the evidence was sufficient to establish that the victim was sleeping in his bed when the defendant entered the house without his victim's consent and the defendant surprised and killed him).

### 2. Murder

5

To prove the offense of capital murder, the State was required to show that appellant intentionally or knowingly shot the Squires and caused their deaths. *See id.* §19.03(a)(2). Appellant argues that no direct or circumstantial evidence was presented that could prove he intended to cause the death of either Squires. Appellant contends that the intent element for capital murder was not proven by the State because the State did not present any evidence that he harbored ill will towards them and the record contained no evidence of appellant's fingerprints at the crime scene or eye witnesses who could place him near the scene.

However, contrary to appellant's contention that the record is bereft of any evidence to infer that he possessed the requisite intent to commit murder, the evidence showed that the Squires were shot at a close range of between two and four feet. At such close proximity to the victims, the law presumes an intent to kill. *See Sholars v. State*, 312 S.W.3d 694, 703 (Tex. App.—Houston [1st Dist.] 2009, pet. ref'd.); *Childs v. State*, 21 S.W.3d 631, 635 (Tex. App.—Houston [14th Dist.] 2000, pet. ref'd.). Furthermore, the bullet that exited Mr. Squires' body was lodged into the wall opposite the bathroom, and Mr. Squires fell forward into the bathroom. Such placement of the bullet and his body indicates that the shooter was in the bathroom when he shot Mr. Squires. The jury could logically infer from this evidence and the presence of his feces elsewhere in the house that appellant was the shooter because he was unable to control his bowels that night and was in the bathroom when he shot Mr. Squires.

### 3. Party to the Offense

The evidence also indicates that multiple parties participated in the burglary. Under a hypothetically correct jury charge, the jury could convict appellant if it found that

6

he was present at the commission of the offense and he encouraged or aided another person in intentionally causing the death of the Squires. *See* TEX. PENAL CODE ANN. § 7.02(a)(2); *King v. State*, 29 S.W.3d 556, 564 (Tex. Crim. App. 2000). In reviewing the sufficiency of the evidence to support appellant's participation as a party to the offense, we may consider evidence occurring before, during, and after the commission of the offense and may rely on his actions showing an understanding and common design to do the prohibited act. *Gross v. State*, 352 S.W.3d 238, 240 (Tex. App.—Houston [14th Dist.]), *aff'd*, 380 S.W.3d 181 (Tex. Crim. App. 2012).

Appellant argues that while the evidence shows that someone intentionally and knowingly caused the deaths of the Squires, the evidence does not prove that appellant was present at the time the murders were committed. However, there were two sets of footprints found in the Squires' home. Appellant's DNA establishes that he was there shortly before the first police officer arrived because the fecal matter was still fresh. As previously mentioned, his DNA was also found at the end of the trail leading from the Squires' home to a ditch some distance away. The pajamas found outside on the trail matched the pajamas of the victim left inside the home, further indicating a burglary was being committed. Finally, neither Mr. nor Mrs. Squires owned any firearms. The jury could reasonably infer from such evidence that appellant was present at the commission of the burglary and that he or his accomplice brought a firearm with them with the intent of murdering the inhabitants of the residence should they interfere with the burglary. *See Gardner*, 306 S.W.3d at 287. Thus, considering the evidence of the events that occurred during and after burglary, we conclude that the evidence presented was legally sufficient to support appellant's conviction. We overrule appellant's first issue.

7

### III.   MOTION FOR A NEW TRIAL

By his second, third, and fourth issues, appellant asserts that the trial court abused its discretion by denying his motion for a new trial because the court unconstitutionally applied Texas Rule of Evidence 606(b) and improperly excluded juror testimony.  We review these issues together.

#### A. Standard of Review and the Applicable Law

We review a trial court's denial of a motion for a new trial under an abuse of discretion standard, and we reverse only when the trial judge's opinion was so clearly erroneous as to lie outside the zone within which reasonable persons might disagree. *Freeman v. State*, 340 S.W.3d 717, 732 (Tex. Crim. App. 2011).  If there is no such abuse of discretion, we are not justified in reversing the judgment.  *Id.*  We view the evidence in the light most favorable to the trial court's ruling.  *Lopez v. State*, 428 S.W.3d 271, 278 (Tex. App.—Houston [1st Dist.] 2014, pet. ref'd).  We do not substitute our judgment for that of the trial court, but will uphold the ruling if it was within the zone of reasonable disagreement.  *Wead v. State*, 129 S.W.3d 126, 129 (Tex. Crim. App. 2004).

Texas Rule of Evidence 606(b) provides that, during an inquiry into the validity of a verdict or an indictment, a juror may not testify as to any matter or statement occurring during the jury's deliberations, to the effect of anything on that juror's or another juror's vote, or any juror's mental processes concerning the verdict or indictment.   TEX. R. EVID. 606(b).  The court may not receive a juror's affidavit or evidence of a juror's statement on these matters.  *Id.*  However, a juror may testify under two exceptions:  (1) as to whether any outside influence was improperly brought to bear on any juror; or (2) to rebut a claim that the juror was not qualified to serve.  *Id.*

8

**B. Discussion**[2]

Appellant argues that he is entitled to a new trial because of juror misconduct that occurred during voir dire proceedings and during jury deliberations at trial. He contends that during voir dire proceedings, the State introduced and explained the law of parties to the venire panel even though the law of parties was not authorized by the charge of the court. According to appellant, this constituted an "outside influence" that was improperly brought to bear on jurors under the first exception of Texas Rule of Evidence 606(b). Furthermore, appellant argues that, according to juror Maribel Martinez's affidavit, the jury found appellant guilty based on the law of parties and there was not enough evidence to convict him of murder as a principal. To support this contention, defense counsel introduced into evidence notes from the jurors asking for clarification on the law of parties. Appellant further asserts that the trial court abused its discretion in denying his motion for a new trial because he was not given the opportunity to develop the record on appeal and because Rule 606(b) was applied unconstitutionally.

The "outside influence" exception allows proof of external pressures that may affect the verdict, and it is limited to those situations that occur both outside of the jury room and outside of the jurors' personal knowledge and experience. *See* TEX. R. EVID. 606(b); *Colyer v. State*, 428 S.W. 3d 117, 124 (Tex. Crim. App. 2014). The State brought up the law of parties during voir dire, before the jury had even been selected. Maribel

---

[2] Appellant argues that Texas Rule of Evidence 606(b) is unconstitutional as applied to him. Appellant does not dispute that Texas Rule of Evidence 606(b) has been deemed constitutional by provisions of both the federal and state constitutions and he does not give a substantial reason as to why it should be held unconstitutional in his particular case. Appellant does not cite to any authority to support his contention that Rule 606(b) is unconstitutional as it pertains to his case. Under Texas Rule of Appellate Procedure 38.1, appellant must provide specific arguments and authorities that support his argument to effectively brief a constitutional issue. *See* TEX. R. APP. P. 38.1; *Hicks v. State*, 15 S.W. 3d 626, 630 (Tex. App.—Houston [14th Dist.] 2000, pet. ref'd.). Thus, because appellant has not complied with the briefing requirements of Rule 38.1, we hold that appellant has waived appellate review of his constitutionality issue.

9

Martinez had not yet been designated as a juror, and was merely a member of the venire panel. The information about party liability that she obtained from the State was acquired prior to being selected to serve on the jury. *See Tate v. State*, 414 S.W. 3d 260, 264 (Tex. App.—Houston [1st Dist.] 2013, not pet.) (stating that a jury's decision was not affected when a member of the venire panel acquired information relevant to the case prior to being selected to serve on the jury). Furthermore, information given to the venire members by the parties during voir dire is not an outside influence because it was part of normal court proceedings. *See Franks v. State*, 90 S.W.3d 771, 802 (Tex. App.—Fort Worth 2002, no pet.). Texas courts have considered factual or legal information conveyed to the jurors by an unauthorized individual who seeks to affect the deliberations as an "outside influence." *See Colyer*, 428 S.W. 3d at 125. Appellant does not allege that the State provided factual or legal information to the jury outside of the normal proceedings of the trial. Thus, the jury's consideration of the law of parties was not an "outside influence" improperly brought to bear against the jury. *See* TEX. R. EVID. 606(b); *see also Franks*, 90 S.W.3d at 802. The trial court did not abuse its discretion by denying appellant's motion for new trial. We overrule appellant's second issue.

### III.     CONCLUSION

Under the facts of this case, we conclude that (1) the evidence was legally sufficient to uphold appellant's conviction; and (2) the trial court did not abuse its discretion by denying appellant's motion for a new trial.

We affirm the judgment of the trial court.

NORA L. LONGORIA
Justice

Do not publish.
TEX. R. APP. P. 47.2(b).

Delivered and filed the
25th day of June, 2015.